## BENJAMIN POYDRAS *v.* W. LAURANS et al.

| 6 | 771 |
|---|---|
| 52 | 2097 |
| 6 | 771 |
| 125 | 164 |

Where a person, acting as agent, buys property for his principal in his own name, without stating the agency, the effect of the title, when recorded, is to make the agent the owner, so far as third persons are concerned. The only cases in which there has been any exception to the effect of the registry laws, are those of gross fraud on the part of the subsequent purchaser.

On the purchase of real property, in the name of a partnership, the partners become joint owners of the property, and a creditor of the partnership cannot claim to be paid out of it in preference to an ordinary creditor.

APPEAL from the District Court of New Orleans, *Strawbridge*, J. *Miles Taylor*, for plaintiff. *C. Roselius*, for defendants. The judgment of the court was prepared by

EUSTIS, C. J. The plaintiff alleges himself to be the sole owner of a certain lot of ground situated in the First Municipality, and to have been in undisturbed possession thereof since the 28th of February, 1840, the date of his purchase from his vendor, *Edward Hamilton*; that the sheriff has seized and advertised for sale, under an execution against *Lubin Garnier*, the one undivided half interest of said *Garnier* in said lot, to satisfy a judgment against said *Garnier*, obtained by the defendant, *Laurans*, in the district court held at East Baton Rouge; he obtained an injunction against further proceedings under the execution. The defendant contends, that the interest of *Lubin Garnier* in the lot is subject to the execution against him. The court below decided in favor of the defendant, dissolved the injunction, and amerced the plaintiff and his surety in damages. The plaintiff has appealed.

In 1840, the plaintiff was the creditor of *Hamilton*, and the latter transferred and sold to the commercial firm of *J.* and *L. Garnier*, composed of *John* and *Lubin Garnier*, of New Orleans, the lot in question. The act of sale was signed by *Lubin Garnier*, who appeared as the bearer of the note of *Hamilton*, which belonged to the plaintiff, and formed a part of the consideration of the sale. The act bears date the 28th of February, 1840. *J.* and *L. Garnier* were the

agents of the plaintiff, and although the transaction appears in their names, the proof is clear that it was on the *bonâ fide* account of the plaintiff, and we think the possession must be considered to have been in the plaintiff since that period. The lot was assessed in his name, taxed in his name, and the receipts for rent are all taken from the tenants in his name. On the lot, at the time of the sale, there was an old building of little value; the plaintiff replaced it by valuable new buildings. *J.* and *L. Garnier* continued to be the agents of the plaintiff until 1842, when the firm was dissolved. *Lubin Garnier* was his agent until 1847, and was succeeded by *Messrs. Rochereau & Co.*, his present agents. The plaintiff did not reside in the city, and his business, the management of his property therein, and the collection of his rents, was confided to his agents. The present proceedings were instituted in 1849; so that the possession of the plaintiff was less than ten years, and no title has been acquired by him, by reason of the prescription of that term.

The plaintiff suffered the title of this property to be taken in the name of *J.* and *L. Garnier*, and to remain in their name. There is no notarial act, no record whatever of any interest of his in it, or to create the belief that it belonged to any other person than to those in whose name it stood. The district judge decided in favor of the defendants, on the non-recording of the plaintiff's title in the office of the register of conveyances in New Orleans. The act of 1827, creating this office, makes it the duty of the register to record all acts of transfer of immovables or slaves, passed in the city and parish of New Orleans, which shall have been presented to him by the parties, and then declares, that said acts of transfer of immovables, whenever they are not registered agreeably to that law, shall have no effect against third persons but from the day of their being registered.

The only record of the title to this property existing, showed it to belong to *J.* and *L. Garnier*, the vendees in the sale from *Hamilton*. The effect of this title, whatever may have been the rights of the real owner, *Poydras*, in relation to it, as between him and *J.* and *L. Garnier*, was to make them the owners so far as third persons were concerned. The cases on this subject are numerous. See *Dozier* v. *Squires*, 13 L. R. 131. *Hyams* v. *Richardson*, 286. *Foster's Heirs* v. *Farrar's*, 11 L. R. 408. *Stockton* v. *Craddick*, 4th Ann. 283. *Leverich* v. *Toby*, 6th Ann. C. C. 2417. But as the case has been argued, principally as to the effect of the registry law of 1827, we do not decide it on this ground.

The counsel for the plaintiff has urged to the court the rule, which obtains in England and most of the United States, that notice to a party constitutes such an equity as entitles him to protection. The statutes of England, relating to their registry laws, which apply to certain counties only, as well as those of several of the States, are not similar to ours on the same subject. The decisions under those statutes, as to what notice will save the holder of an unregistered deed, form no part of our jurisprudence. Nor has the doctrine ever been recognized by this court, that possession under an act of sale not recorded, was sufficient evidence of notice to creditors and subsequent purchasers, to defeat the operation of the registry laws. In the case of *Tulane* v. *Levison*, 2d Ann. 789, we said: "The theory, that notice is equivalent to registry in relation to conveyances of real property, we do not understand to have been adopted in our jurisprudence." The subject has been several times under consideration, and the difficulties attending every mode in which laws of that description have been carried into effect in different countries, have been examined and weighed. The

only cases in which there has been any exception to the effect of registry of conveyances, are those of gross fraud on the part of subsequent purchasers. *Splane* v. *Mitcheltree*, 2d Ann. 265. *McGill* v. *McGill*, 4th Ann. 269.

The case of *Tulane* v. *Levison*, cited, was similar, in many respects, to this, though it did not come within the statute of 1827, which relates to New Orleans exclusively. The opinion of the court states our view as to the rights of creditors. In this case, *Barney* was the owner of a lot in the town of Natchitoches. He sold to *Bartlett*, in 1842, by public act, in New Orleans. The act was recorded in the office of the parish judge of Natchitoches, but in the wrong book: in the book of mortgages, instead of that of conveyances. The plaintiff purchased at a sheriff's sale, in 1843, which was made under an execution issued on a judgment obtained by the plaintiff against *Barney*. The possession was equivocal. The plaintiff recovered the lot from the heirs of *Bartlett*. The court said:

" The title to the lot being in the name of *Barney* on the public records, it became subject to the mortgage, which the recording of the judgment created on the 3d day of May, 1842, and, we think, could be lawfully seized under the execution issued on the judgment, and sold to satisfy the same. It seems to follow, as a necessary consequence, that, if it could be lawfully sold under this state of things, a purchaser, having a knowledge of the facts, would be justified in buying the property.

" It is in evidence, that the plaintiff's attorney, before the issuing of the *fieri facias* under which they became the purchasers, was apprised of the existence of the act of sale to *Bartlett*, and of its being recorded in the mortgage office; but that, on finding no record of it in the office of the parish judge, he had the lot seized and bought in for his clients, the plaintiffs. As we consider the right of the plaintiffs to have the property sold to satisfy their debt, paramount to that of the defendant under his unrecorded deed, by virtue of their recorded judgment, we do not see how that right can be impaired by this knowledge on the part of the attorney."

Where an owner is in possession, under a recorded title, we have considered the object of the registry laws attained, and have protected him from disturbance from a title acquired, under an intermediate recorded conveyance, from a party not in possession. *Stockton* v. *Briscoe*, 1st Ann. 249. *McGill* v. *McGill*, cited. *Cotton* v *Stacker*, 5th Ib. 677. In the latter case, the court said : " In *Stockton* v. *Briscoe*, we held that the object of the registry laws is to make apparent the ownership of property, and that whenever the ownership appears on the public records, by proper titles, the object is attained." We adhere to this opinion. We do not believe it is the intent, and we are sure it is not the policy, of the registry laws to defeat the titles of purchasers, in good faith, under recorded deeds, on the ground that an anterior conveyance, however remote, of the same property may not have been recorded. Such an interpretation would, in our opinion, effectually destroy the security of property, for which registry laws are established.

In each of these cases the subject was fully considered, and the court was not unanimous in its opinion. Mr. Justice Slidell dissented, and thought the cases within the registry acts, and that their provisions should be applied to them.

The cases cited from the Louisiana Reports, by the counsel for the defendant, *Williams* v. *Hagan*, 2 L. R. 123, *Armstead* v. *Bowden*, 5 L. R. 263, *The Syndic of McManus* v. *Jewitt*, 6 L. R. 541, we think, are conclusive as to rights of

POYDRAS
v.
LAURANS.

the judgment creditor, under his execution, against property standing in the office of the register of conveyances in the name of the defendant.

We think that the words of the act of 1827 are so plain, and its object is so evident, that it interprets itself, and that effect must be given to it in all cases in which it does not conflict with some paramount principle of law, and in the present case we can discover none which should obstruct its operation. The plaintiff let his property remain for years in the names of others, and never took a conveyance of it. There is no propriety in straining a statute to relieve a party in this situation.

It is contended by the counsel for the plaintiff, that if this lot is not considered as belonging to *Poydras*, it must be some part of the partnership property of *L.* and *A. Garnier* and is not liable to seizure at the instance of a creditor of one of the partners. The case of *Skillman* v. *Purnell*, 3 L. R. 497, answers this objection. *J.* and *L. Garneir's* can only be considered as to third persons, as joint owners. Their partnership, by the plaintiffs own showing, was dissolved about the year 1842.

Nor is there any more force in the objection that *Poydras*, by this affair, becomes the creditor of the partnership, and has a preference to be paid out of the proceeds of the sale of the property. If his property goes to pay *Lubin Garnier's* debt, he becomes the creditor of *Lubin Garnier*, and may take the judgment his property has satisfied, but this does not make him a creditor of the partnership, against which it is clear he has no claim whatsoever.

The district judge, in dissolving the injunction, condemned the plaintiff and his security *in solido*, to pay twelve per cent damages, and eight per cent interest. The act of 1833, relating to injunctions obtained by third persons, vests the power to assess damages in the discretion of the court.

We do not think the present case, one calling for damages against the party obtaining the injunction.

The judgment of the district court, allowing damages and interest against the plaintiff and his surity on the injunction bond, is, therefore, reversed, and, in other respects, the same is affirmed; the appellee paying the costs of this appeal.