No. 3999

Second Circuit

———

## SILBERNAGEL ET AL. v. HARRELL ET AL.

———

(January 14, 1932. Opinion and Decree.)

———

Todd, Todd & Fraser, of Bastrop, attorneys for plaintiffs, appellants.

Oliver & Digby, of Monroe, attorneys for defendants, appellees.

DREW, J. Plaintiffs, residents of the state of New York, instituted this suit in the district court of Morehouse parish against the defendants, both residents of

Morehouse parish, Louisiana. The original demand of plaintiffs is one seeking to have the court decree a certain quit-claim deed executed by plaintiffs in favor of George P. Harrell, of date January 16, 1930, to be null and void for the reason that said deed was procured by defendants through fraud and misrepresentation, and was executed by plaintiffs through error of fact, induced by the fraudulent misrepresentations of defendant George P. Harrell.

The alleged fraud and misrepresentation is contained in a letter written by defendant Harrell to one Charles Titche, agent of plaintiffs, wherein the plaintiffs were advised that they had no right, title or interest in the land in controversy and if they ever had any right, title or interest in said land, same had been lost by prescription. Plaintiffs alleged they acted on the faith of the representations in said letter and, believing they had no right, title or interest in said land, executed a quit-claim deed, and later, from examination of the records, found that they owned a one-sixth undivided interest in the land. In the alternative, they alleged the price paid by defendants was less than one-half the value of the land and that said sale should be set aside for lesion beyond moiety.

Defendants filed an exception of no cause of action to the original demand, which was sustained by the lower court, and later, by agreement of counsel, the ruling was withdrawn and the exception referred to the merits. Defendants in answer admit that at the time of the death of the husband of one plaintiff and father of the other two under whom they are claiming he was the owner of an undivided interest in the S½ of the SW¼ of section 30, township 21 north, range 5 east, Morehouse parish, Louisiana, the property described in the quit-claim deed plaintiffs are seeking to annul. They admit the letter alleged to have been written by George P. Harrell was written by him and that it merely contained his version of the condition of the title, as found by him from investigation, and was his honest conclusion concerning the title to said property. They admit the execution of the quit-claim deed, but deny that plaintiffs acted upon the representations made in the letter to Charles Titche from George P. Harrell, and alleged that the moving cause for the execution of the deed was the consideration of $200, to be paid by defendants. They further plead estoppel by deed and allege that the lis pendens filed by plaintiffs through their agent is null and void for want of authority on the part of said agent.

Defendants further admit the transfer from George P. Harrell to B. L. Beasley, the other defendant, and deny any collusion or fraud between them. Defendants further allege that the deed from plaintiffs to Harrell was a quit-claim deed, without warranty of title, and that plaintiffs only transferred such title as plaintiffs might own or assert and only such pretensions of ownership as they might own, and that the value of said pretensions and claim of title were not worth more than $100; that the pretensions and claim of ownership were very vague, stale and speculative. They deny all other allegations of plaintiffs' petition.

On the day of trial, plaintiffs attempted to file an amended petition wherein they attempted to include another piece of land, which was omitted in the original petition. The court refused to allow the amended petition to be filed, and we find no error in its ruling on this point. The lower court rendered judgment for defendants, rejecting plaintiffs' demands on both

the original and alternative demand, from which judgment plaintiffs prosecute this appeal. Defendants have not appealed and have not answered plaintiffs' appeal; therefore, the exception of no cause of action is not before us for determination.

The testimony of plaintiffs was taken by deposition and all three of them testified that they signed the quit-claim deed on the representations made in the letter from George P. Harrell to Charles Titche, and at the time they executed the deed, they did not believe they had any right, title or interest in the said property, and if they had known they were the owners of a one-sixth interest in the eighty acres, they would not have executed the deed. The letter upon which plaintiffs rely for annulling the deed reads as follows:

"West Monroe, Louisiana.
December 16, 1929.
"Mr. Charles Titche,
"Monroe, Louisiana.
"Dear Mr. Titche:

"I am anxious to secure a quit-claim deed from the heirs of Albert Silbernagel on some property described as S½ of the SW¼ of Section 30, Township 21 North, Range 5 East, Morehouse Parish, La., and since you represent them and act as their agent in and on some property owned by them in Sec. 22 Twp. 22 R. 8 East in the same parish, I am asking you to take this up with them who I understand are residents of New York City.

"The above described land was owned at one time by Thos. R. Polk, and he died and left six children, and these children inherited a one-sixth apiece, and one of the heirs whose name was James Cecil Polk, seemed to have been in debt with Albert M. Silbernagel and Benjamin Silbernagel, and he sold him their interest which was one-sixth of the above described eighty acres of land, this all happened in the year of 1877. Later other parties bought this land I mean the other five-sixths, but this one-sixth was not transferred from the said Silbernagels.

"In purchasing this land my attorney has requested as a matter of precaution to secure if possible a quit-claim deed from the heirs of Albert M. Silbernagel. Of course, Mr. Titche you understand that prescription has run against this property being in possession of another party for more than thirty years gives him a good title. It is almost an evident fact that Silbernagels sold this land but in 1879 a part of the records of Morehouse Parish were destroyed by fire and it appears that this transfer was destroyed, that is the deed, for other parties that owned it, made transfers on the whole amount of acreage.

"Mr. Titche you understand and are well enough acquainted with the attorneys in this portion of the state to know how particular they are about these kind of things. They want to remove every little doubt or fear from a title before approving it. And this is a matter that amounts to very little, even if Albert M. Silbernagel had never sold this property his widow and heirs would have lost their claim by prescription. However I am willing to pay them something for signing me a quit-claim deed, if you will mail the enclosed deed to them and have them sign it and return to you I will pay them $100.00, or rather I will give you the $100.00 upon delivery of the deed to me, and I am sure that this will be satisfactory to them, and in addition I will pay you for your trouble.

"I am enclosing herewith a quit-claim deed, which I will ask that you have Mrs. Silbernagel and heirs to sign on the right hand side and the witnesses on the left hand side and page two of this quit-claim deed is a proof to be made by one of the witnesses to the signatures, after Mrs. Silbernagel and heirs have signed this deed, any one of them can take the two witnesses before a Notary Public or Commissioner, commissioned to make proofs on deeds in the State of New York and have this proof made.

"Mr. Titche I will ask that you please take this matter up with them, and ask them for an early reply as I am very anxious to get the matter closed, and the vendor or rather the man I am buying from is very much in need of his money.

"Thanking you, I am
Yours very truly,
"(Signed) George P. Harrell.

"Address:
"George P. Harrell,
"P. O. Box 3031,
"West Monroe, La.
 "P. S. Mr. Titche please find out for me who Albert M. Silbernagel father was."

The above letter was written by defendant Harrell to Charles Titche, the agent of plaintiffs, who had charge of plaintiffs' property in Morehouse parish and upon whom plaintiffs relied for any and all things done regarding the property. The title, as disclosed by the abstract filed in evidence, is as follows:

In 1877, T. J. Polk conveyed to Silbernagel & Company a one-sixth undivided interest in the Polk plantation, which included the eighty acres herein involved, and in 1898 Benjamin Silbernagel conveyed to Albert M. Silbernagel, from whom plaintiffs inherited, all his interest in and to all real estate standing in the name of Silbernagel & Company, a firm composed of Benjamin and Albert M. Silbernagel. Under this deed, Albert M. Silbernagel became the sole owner of a one-sixth undivided interest in the eighty acres of land in question, and all other lands known as the "Polk Plantation." In 1904, in a partition proceeding of the Polk plantation, Albert M. Silbernagel was recognized as a one-sixth owner and received one-sixth of the funds derived from the partition by licitation. In this proceeding, the eighty acres in question were not included. For what reason, the record fails to disclose. After the partition proceeding the eighty acres in question were not assessed to anyone. It appears to have been dropped from the assessment rolls of Morehouse parish.

Plaintiffs' agent, Titche, who was looking after the property of plaintiffs and seeing that the taxes were paid, did not pay the taxes on this particular eighty, due possibly to the fact that it was not assessed, and he apparently had no knowledge that plaintiffs had any right, title or interest in the eighty acres. Albert M. Silbernagel at one time lived in Morehouse parish, but had not lived there for many years, and the plaintiff, his wife and daughters, had never lived in Morehouse parish, their domicile being always in the city of New York, and plaintiffs did not have knowledge that they owned the interest in the land involved in this case.

In the year 1917, Albert M. Silbernagel died in New York, and on December 6, 1919, plaintiffs were put in possession of all property left by him, as surviving wife and heirs. In the description of the real estate herein involved, the eighty acres referred to was not included. It was not assessed to plaintiffs and they did not pay the taxes on it. In 1928 or 1929, gas was discovered in the vicinity of this land which had apparently been lost by its owners and the assessors, and defendant Harrell undertook to discover who was the owner of it. He learned that it had at one time belonged to the Silbernagels and wrote Mr. Charles M. Titche, plaintiffs' agent, as is shown by the above quoted letter. On January 7, 1930, Mr. Titche wrote the following letter to plaintiffs:

"Rayville, La.
January 7th, 1930.

"Dear Minn:
 "I am enclosing two letters from August Leopold and George P. Harrell.
 "Upon receipt of the one from Harrell I thought it well to ask of August if he knew anything of the transaction that I may have something at first hand to state to you.
 "As the matter stands I shall express myself to you as I felt before receiving the letter from August. It looks to me you have no claim at all now from a legal standpoint. It is also more than probable

the Silbernagels disposed of the interest as Harrell stated.

"I conclude it is now only a matter of how much you want for the quit-claim. I have had quite a lot of experience in this regard since gas has arrived, so my attitude has been one of fairness as best I could see it. If I had any claim at all I wanted the value otherwise what was offered to me was in the manner of a gift. I don't want any commission and am only too glad to bring the matter before you and suggest its acceptance but if .you will write to me that inasmuch as there will be a long division between those of the family interested you think $150.00 would enable you to give each say $25.00! Then write to me separately to accept the $100.00 if no better, as you wish.

"All of us are well. Josephine has the same old trouble but is out some almost every day and enjoys a game of bridge as the month's result even up. Believe me always your willing assistant and well wisher to all of you.

Affectionately,

"Charles."

On January 18, 1930, the quit-claim .deed from plaintiffs to defendant Harrell was executed in New York, but was not delivered to Harrell until the last days of January, 1930. The letter of date January 7, 1930, from Charles Titche to Mrs. Silbernagel, addressed "Dear Minn" and signed "Charles" shows that plaintiffs' agent, Titche, made some investigation of the title to the eighty acres of land, and the parol testimony shows that he took the matter up by letter with Mr. August Leopold, who advised him to take what he could get for the quit-claim deed. Mr. Titche forwarded both the letters from Mr. Leopold and Mr. Harrell to plaintiffs, with a letter he wrote plaintiffs advising them to sign the quit-claim deed, as is shown by the letter quoted above.

Plaintiffs testified that they acted solely on the letter from Mr. Harrell to Mr. Titche, but we are convinced that they acted upon the advice of Mr. Titche, their agent, and not on the Harrell letter. It is not shown that they were even acquainted with Mr. Harrell. He was a complete stranger to them, one they had never seen, and it would have been indeed strange for them to part with their property because he told them by letter they had no title. Plaintiffs had implicit confidence in their agent, Titche, and whatever action he took in regard to their property in Morehouse parish was always ratified by them. At the time of trial, their confidence in Titche had not been shaken. They did not accuse him of fraud or misrepresentation, neither did they allege he was misled by the letter of Mr. Harrell, and his letter to plaintiffs conclusively shows that Harrell's letter did not mislead him, and that the advice he gave to plaintiffs was founded upon his own investigation made through Mr. August Leopold.

We are convinced that at the time plaintiffs executed the quit-claim deed disposing of their right, title and interest, if any they had—in other words, their pretensions to title to the eighty acres of land, they did not believe they had any right, title or interest in the land, and thought they were getting something for nothing. That in itself does not give them the right to have the sale annulled. The record, we think, discloses the fact that defendants did not know in whom the title to this land was, as it shows that they also took a quit-claim deed from one of the heirs of Benjamin Silbernagel and paid him $150 for it, when in fact the record discloses that he had no interest in said property. It is also shown that a small part of this land was under fence and had been for many years, being worked by some darkies who were not tenants of plaintiffs.

Article 1847 of the Revised Civil Code, and paragraphs 1, 2 and 3 thereunder, read as follows:

"Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other. From which definition are drawn the following rules:

"1. Error is an essential part of the definition; an article that can not deceive can have no effect in influencing the consent, and can not injure the validity of the contract.

"2. The error must be on a material part of the contract, that is to say, such part as may reasonably be presumed to have influenced the party in making it; but it needs not be the principal cause of the contract, as it must be in the case of simple error without artifice.

"3. A false assertion as to the value of that which is the object of the contract is not such an artifice as will invalidate the agreement, provided the object is of such a nature and is in such a situation that he, who is induced to contract by means of the assertion, might with ordinary attention have detected the falsehood; he shall then be supposed to have been influenced more by his own judgment than the assertion of the other."

Title in plaintiffs to a one-sixth interest in this land was made apparent by the deed from Benjamin Silbernagel to Albert M. Silbernagel, recorded in conveyance records of Morehouse parish, and the object of the registry law is to make apparent the ownershp of property, and wherever such ownership appears on the public records by proper titles, that object is attained. Notice is thereby given and no careful person can be deceived.

Lumber Co. v. Shadel, 52 La. Ann. 2097, 28 So. 292; Stockton v. Briscoe, 1 La. Ann. 249; Poydras v. Laurans, 6 La. Ann. 773.

Under this ruling of the court, the letter declaring that plaintiffs had no title could not have deceived them in the legal sense, and could not have injured the validity of the contract. Civil Code, art. 1847,

par. 1; Laenger v. Laenger, 138 La. 540, 70 So. 501.

The recorded title in Albert M. Silbernagel was notice, not only to third persons, but notice to those claiming under him, and, when defendants offered to purchase the right, title and interest of plaintiffs in this particular eighty acres of land, it was, we think, sufficient to put plaintiffs on inquiry as to what right, title or interest they had in the land. They had the same opportunity as defendants to examine the record or have it examined, and, if they failed to do so, they cannot be relieved on account of their carelessness and negligence. Rocchi v. Schwabacher & Hirsch, 33 La. Ann. 1365; Forsman v. Mace, 111 La. 28, 35 So. 372; Pike v. Kentwood Bank, 146 La. 704, 83 So. 904; Davitt v. Long-Bell Farm Land Corp., 162 La. 59, 110 So. 88.

Mr. Titche, the agent of plaintiffs and by whose acts they were bound, testified that he did not have the title examined, for the reason that it would have cost $50 for an abstract and an attorney's fee to have it examined. He satisfied himself that the plaintiffs had no title, and so advised them. Acting thereon, they executed the quit-claim deed and instructed him to get all he could from defendants. Defendants' original offer was $100, and, after receiving the deed Mr. Titche suggested a consideration of $300, finally agreeing on $200, which was paid and the deed delivered to defendant Harrell, who soon thereafter conveyed the land to defendant B. L. Beasley.

If there was any misrepresentation by defendant, it would not have invalidated the deed, for plaintiffs could have detected the falsehood by ordinary attention, and, under the jurisprudence of this state and article 1847 of the Revised Civil Code,

they are supposed to have been influenced more by their own judgment than the assertion of the other. There was a month and a half between the time of the offer made by defendant and the closing of the deal, a sufficient length of time for most any kind of investigation. The lower court refused to annul the sale on the original demand based on fraud and misrepresentation, and his judgment in that respect is correct.

The remaining question for determination is that of lesion beyond moiety. Defendants paid $200 for the interest claimed by plaintiffs of one-sixth of eighty acres, or thirteen and one-third acres. Defendants paid a little more than $15 per acre, and, unless this is less than one-half of the value of said land, the plea of lesion beyond moiety must fail. Plaintiffs offered proof of the value of the land, including the speculative value of the minerals, to be $100 per acre, and offered five witnesses—one who fixed the value, less the mineral value, at $35 per acre; two, who fixed its value at $40 per acre; one at $25; and one at $50 per acre. Defendants offered six witnesses who fixed the value, less the minerals, at $10 to $12 per acre, with the exception of one who placed a value of $25 per acre on the land. The entire eighty acres, with the exception of about two acres, is woodland, and is described as a "glazy" land with a big brake through the center of the place. No improvements of any kind are on it, and it is subject to overflow almost yearly. One witness testified that the only value the land has, outside of a speculative mineral value, is for the timber on it, and on which he placed a value of $10 per acre.

Without discussing the testimony of each and every witness, we are convinced that the plaintiffs have failed to prove the value of the land, outside of a speculative mineral value, to be in excess of twice the amount per acre paid by defendants. It is incumbent on plaintiffs to make this proof by a preponderance of evidence, and they have failed. If the mineral value of the land can be considered, then plaintiffs have made out a case of lesion beyond moiety. We do not think the speculative mineral value of the land can be considered in fixing the value of the land under a plea of lesion beyond moiety, and especially so since no development for oil or gas has been made on said land. The value of oil and gas that might be under the land was purely speculative.

The Supreme Court in the case of Wilkins v. Nelson et al., 155 La. 815, 99 So. 607, 609, and reaffirmed in Wilkins v. Nelson, 161 La. 437, 108 So. 875, said:

"At most, any value which may be fixed on the right is contemplative, speculative, and conjectural, not to say fanciful and theoretical. The seller who sells such rights, and the buyer who buys, does so with a speculative intent, and it is a matter of common knowledge that every real estate owner uses his own judgment in estimating the sale value of his property."

In Lockwood Oil Co. v. Atkins, 158 La. 610, 104 So. 386, 388, the court said:

"Moreover, it would be practically impossible to determine whether there had or had not been an enhancement in the value of an oil and gas lease, because from its inherent nature it is not susceptible of having anything more than a mere conjectural and speculative value. In a very recent case we said: 'In the admitted speculative nature of the intangible right it is impossible that there could be any fixed and dependable valuation.' Wilkins v. Nelson, supra."

The same doctrine was announced in the case of Fernandez v. Wilkinson, 158 La. 137, 103 So. 537, and in the case of Fomby v. Columbia County Development Co., 155 La. 718, 99 So. 537, the court held that a

mineral lease is not a contract which may be annulled for lesion beyond moiety.

In Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 863, 91 So. 207, the court held that the owner of the land himself has not absolute property in the oil, gas and water beneath the land, but only the right to draw them through the soil and thereby become the owner of them. This same doctrine was announced in Louisiana Gas & Fuel Co. v. White Brothers, 157 La. 728, 103 So. 23.

In White et al. v. Bergstedt, 164 La. 993, 115 So. 59, 60, the court said:

"In order to rescind a sale for lesion, the rule is that then plaintiff must establish, with legal certainty that the market value of the property, at the date of the sale, was more than twice the amount the defendant paid for it. The record discloses that all of the witnesses who testified on the trial of this case, as to the value of the land sued for, with one exception, say that, if the speculative value of the land for oil and gas purposes is disregarded, its market value is much less than twice the price the defendant paid for it."

In the case of Demaret v. Hawkins, 8 La. Ann. 483, the court said:

"The right to rescind a sale for lesion beyond moiety, is the only restraint upon the liberty of the citizen to bind himself and his property according to the dictates of his own judgment; and the evidence relied on to establish lesion should be peculiarly strong and conclusive."

In Erskine Heirs v. Gardiner, 166 La. 1098, on page 1102, 118 So. 453, the court held that the plea of lesion beyond moiety had no application to a sale of speculative interests and conjectural rights to immovables, but only the sale of immovables where the right is clear and the possession undisputed, citing Fernandez v. Wilkinson, supra.

In Wilkins v. Nelson, 155 La. 807, 99 So. 607, the court held that the right to withdraw oil and gas from the land was a servitude and that a servitude established on an immovable estate is declared to be an immovable, but such servitude to withdraw oil and gas from the land is a real and incorporeal right and is not regarded as an immovable in the sense in which the word "immovable" is used in article 1861 of the Revised Civil Code. It declared the right to extract oil and gas from the land to be an immovable by the disposition of the law, and when article 1862 of the Revised Civil Code restricted the action of lesion to immovables, it meant immovables which are such by their nature and not such as are made immovable by disposition of the law.

The above cited decisions clearly hold that oil and gas under and in the ground are not subject to absolute ownership, that its value is purely speculative and could not be definitely fixed, and that an action for lesion beyond moiety will not lie to set aside a sale of the right to extract oil and gas from the soil. It is therefore obvious that in an action of lesion beyond moiety in the sale of land that the value of the land, less the speculative value of the minerals that might be thereunder, is the value to be considered in determining the case. The plaintiffs in this case have failed to prove with that certainty required in an action of this kind that the value of the land in question is twice the amount paid by defendants. The lower court so held and its judgment is correct.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with all costs.