406 So.2d 6 (1981)
A. F. BLAIR CO., INC.
v.
Robert C. MASON, Robert C. Mason General Contractor and M & H Engineers and Construction Co.
Millard BLANCHARD, d/b/a Blanchard Electrical Service
v.
Robert C. MASON, General Contractor and Hallmark Insurance Company.
Nos. 14338, 14339.
Court of Appeal of Louisiana, First Circuit.
October 12, 1981.
Rehearing Denied December 10, 1981.
*8 John I. Hulse, IV, New Orleans, for plaintiff and appellee A. F. Blair Co., Inc.
Richard Mary, Baton Rouge, for defendant and appellant Hallmark Ins. Co.
Kenneth Watkins and Philip McMahon, Houma, for defendant and appellant Houma Aviation Services, Inc.
William C. Kaufman, III, Baton Rouge, and Edward James Gaidry, Houma, for defendant and appellee Thibodeaux Associates, Inc.
Daniel J. Walker, Houma, for plaintiff and appellee Millard Blanchard.
Before ELLIS, LOTTINGER and PONDER, JJ.
LOTTINGER, Judge.
These consolidated cases concern the right of a judgment creditor to garnish funds due and owing to the judgment debtor under a construction contract. The plaintiff, A. F. Blair Company, Inc. (Blair), seeks to enforce a judgment against the defendants, Robert C. Mason, Robert C. Mason General Contractor and M & H Engineers and Construction Company (Mason), by garnishing funds due and owing to Mason under a construction contract with Houma Aviation Services, Inc. (Houma Aviation). Mason eventually defaulted on the job with Houma Aviation. Mason's surety, Hallmark Insurance Company (Hallmark), was called in to complete the work and pay lien claimants.
Hallmark and Blair are the principal litigants before this court, the dispute being over which one of them is entitled to the funds owed to Mason by Houma Aviation.[1] The trial court ruled that Blair was entitled to the funds, and Hallmark appealed. The primary issue is whether funds due and owing by the owner under a construction contract are subject to seizure and, if so, whether the seizure was properly effected.

THE FACTS
On July 23, 1976, Houma Aviation entered into a contract with Mason for construction of a $149,036.00 hangar and office facility at the Houma-Terrebonne Airport. The contract was a standard form agreement between the owner and contractor prepared by the project architects, Thibodeaux and Associates, Inc. (Thibodeaux). Mason secured performance and payment bonds from Hallmark and, in conjunction therewith, assigned and transferred its rights to the proceeds of the contract to the surety.
In an unrelated matter prior to this time, Blair had become a creditor of Mason for the sum of $37,840.41. Blair reduced the debt to judgment on October 26, 1976, in the Nineteenth Judicial District Court for the Parish of East Baton Rouge.[2] On December 8, 1976, Blair filed suit in the Thirty-Second Judicial District Court for the Parish of Terrebonne to make the Baton Rouge judgment executory. On the same *9 date Blair caused a writ of fieri facias in connection with garnishment to be served on Mason and Houma Aviation, and further caused garnishment interrogatories to be served on Houma Aviation, the garnishee.
In answer to the first set of interrogatories, Houma Aviation generally denied having any funds in its possession belonging to Mason. However, Houma Aviation admitted that Mason was under contract with it by virtue of the July 23, 1976 contract. Blair thereafter filed a motion to traverse the answers to the interrogatories and to forfeit funds, contending that the answers were "both contradictory and evasive" and that Houma Aviation was holding funds due to Mason under the contract. Blair concomitantly filed supplemental garnishment interrogatories directed to Houma Aviation to ferret out further information about the Mason contract. The pertinent supplemental interrogatory asked:
"Please state at the present time what if any retainage is being withheld by Houma Aviation Services, Inc. with regard to the contract between Robert C. Mason, General Contractor and Houma Aviation Services, Inc."
To this question, Houma Aviation replied:
"At the outset of the contract a $30,940.00 change order deduction was issued, reducing the total contract to $149,036.00. Considering the above payments [which were mentioned in a previous answer], Houma Aviation Services, Inc. retains a balance of $93,994.71 less penalties accrued in favor of Houma Aviation Services, Inc. under the terms of the contract."
About two weeks after the supplemental garnishment interrogatories were filed, Hallmark filed a petition of intervention claiming that Mason had assigned all the sums due under the construction contract to the surety and that the assignment predated service of the garnishment process by Blair. Hallmark claimed that various liens had also been filed against the job and questioned whether the remaining portion of the contract price would be sufficient to pay the claims of materialmen, subcontractors and laborers having valid liens against the property. Hallmark prayed for a declaratory judgment decreeing that no funds were due to the contractor and therefore no funds were subject to Blair's garnishment writ. Hallmark further asserted its claim for sums due under the contract by virtue of the assignment from Mason.
Hallmark later filed a supplemental and amending petition of intervention claiming that Houma Aviation and the architects had negligently caused certificates of payment to be issued, and payments to be made, under the construction contract when both of them knew that the contract conditions had not been fulfilled. Hallmark sought $92,401.88 from Thibodeaux as the amounts Hallmark claimed were unpaid to subcontractors and materialmen. Hallmark also sought judgment for the same amount from Houma Aviation because Hallmark had paid that amount of money to lien claimants. As Mason's assignee, Hallmark made additional demands for the entire contract sum against Houma Aviation because Houma Aviation had occupied the project. Further, Hallmark sought judgment against Mason in the amount of $111,847.89 to cover the costs, expenses and attorney fees Hallmark expended to complete the project. Finally, Hallmark contended Blair's garnishment was ineffective because there were no funds payable to Mason under the contract at the time of the service of the garnishment interrogatories because Mason was in default under the contract. Hallmark sought damages for wrongful seizure.
The trial court held a hearing on Blair's motion to traverse on May 6, 1977. At the hearing, project architect Eugene Thibodeaux testified that on December 10, 1976-two days after the filing of Blair's garnishment interrogatoriesan Application for Payment No. 5 in the amount of $51,003.22 was submitted by Mason for work done during November and early December. Three days later, on December 13, 1976, the project architect approved Certificate of *10 Payment No. 5 in the amount of $44,593.90.[3] This $44,593.90 figure is the amount presently sought to be garnished by Blair. After hearing this evidence, the trial court rendered judgment referring Blair's motion for forfeiture of funds to trial of the merits and dismissing Blair's motion to traverse the garnishment interrogatories. In its written judgment, the court based its decision on "answers filed and ... stipulation of counsel and return on subpoenas duces tecum." The court found that the garnishment interrogatories were satisfactorily answered.
At the later trial on the merits, the trial court held that Blair was entitled to seizure of the $44,593.90 contract sum due and owing to Mason as evidenced by the application and certificate of payment issued on December 10 and 13, 1976. The court dismissed all of Hallmark's claims.

SPECIFICATIONS OF ERROR
To the trial court's ruling, Hallmark Insurance Company listed nine specifications of error, but these can be condensed to three:
(1) Hallmark claims the trial court erred in allowing any evidence contrary to the facts established by the answers to garnishment interrogatories filed by Houma Aviation Services, Inc. Hallmark contends that since the motion to traverse was dismissed and the motion for forfeiture of funds was referred to the merits, Blair is bound by the answers to the garnishment interrogatories.
(2) Hallmark contends the trial court erred in finding that as of December 8, 1976, contract funds were unconditionally due and owing to Mason under the Houma Aviation contract in the amount of $44,593.90. More specifically, Hallmark contends that the contract provision requiring the contractor to deliver the job free of all liens and in accordance with the plans and specifications places a contingency or condition upon sums due under the contract. Therefore, Hallmark claims, progress payments under the contract are not subject to garnishment by a third party creditor because such sums are not unconditionally due and owing.
(3) Hallmark claims that in the event Blair's seizure is effective, the trial court erred in refusing to allow Hallmark's third party claim against Thibodeaux.

GARNISHMENT PROCEDURE
Hallmark contends that where garnishment interrogatories have been traversed and where the motion to traverse has been dismissed, the liability of the garnishee must be tested solely by reason of the answers. Hallmark further asserts that Houma Aviation's answers to the Blair interrogatories denied that any sums were due and owing to Mason.
Although Houma Aviation's answers were somewhat unclear, we find that those answers do not unequivocally and unconditionally deny indebtedness to the judgment debtor. La.C.C.P. art. 2414[4]; Dunckelman Distributing Company, Inc. v. Hyde, 334 So.2d 236 (La.App. 2nd Cir. 1976), writ refused, 338 So.2d 294 (La.1976). Houma Aviation admitted in the first set of answers that Mason was under contract with it. It admitted further in the second set of answers that certain sums were still being retained by Houma Aviation. These answers are not an unequivocal and unconditional *11 denial of indebtedness to the debtor. Additionally, at the hearing on the contradictory motion to traverse the project architect admitted that at the time of the service of the garnishment interrogatories, Houma Aviation owed Mason $44,593.90 for work performed over the previous month. Under La.C.C.P. art. 2415[5], the architect's testimony at the hearing resulted in an expansion of the written answers of the garnishee.
In dismissing the motion to traverse, the trial court found that the garnishee had satisfactorily answered the interrogatories. It is obvious from the record and from the written judgment itself that the trial court found a valid debt was due and owing from Houma Aviation to Mason. Having obtained answers to interrogatories which admitted that a debt was due and owing, Blair was not precluded from adducing further evidence at the trial on the merits to further refine those answers.

SEIZURE OF PROGRESS PAYMENTS
Hallmark contends that since payments to the contractor were predicated upon completion of the work according to the plans and specifications and free from all liens for material and labor, the progress payments were not unconditionally due and owing. Hallmark also contends that service of garnishment process on December 8, 1976, was ineffective to seize a progress payment that was not applied for until December 10, 1976 and not approved by the architect until December 13, 1976.
At the time of service of the garnishment process, no laborer's or materialmen's liens had been filed against the property, nor had Mason's assignment to Hallmark of all sums due under the contract been communicated to any of the other parties in this proceeding. Mason was not in default. The contract between Houma Aviation and Mason provided that progress payments were to be made on a monthly basis for work done over the previous month. The contract also provided that applications for payment by the contractor could cover work done and materials acquired up to two days prior to the application for payment. Blair's garnishment process was served two days prior to Mason's application for payment. The application for payment, along with the architect's certificate of payment, showed conclusively that Houma Aviation owed Mason $44,593.90 at the time Blair garnished the payment. This amount was unconditionally due and owing.
The fact that the architect had the option under the contract to withhold a certificate of payment does not take away from the fact that, at the time of seizure, a sum of $44,593.90 was due and owing by the owner to the contractor; neither does the fact that the architect later nullified the certificate for payment. Under the facts and circumstances of this case, Blair properly and timely seized a debt that was unconditionally due and owing to Mason. Subsequent events cannot affect rights Blair previously acquired. The case at bar is closely analogous to Morehouse Lumber & Building Material Co., Inc. v. Jacob & Walker, 18 La. App. 536, 139 So. 713 (2nd Cir. 1932); on rehearing, 144 So. 190 (La.App. 2nd Cir. 1932); affirmed 177 La. 76, 147 So. 504 (La.1933). Morehouse, too, involved the right of a judgment creditor of a building contractor to garnish funds in the hands of the owner but due to the contractor on the basis of estimates made from time to time as the work progressed. The contractor/judgment debtor in that case claimed the money due to it under the contract was subject to a contingency in that all labor and material costs were to be paid from the amounts paid by the owner. The court in Morehouse noted that the owner was indebted *12 only to the contractor and not to the laborers or furnishers of materials. The owner discharged his legal obligation to laborers and materialmen by requiring the contractor to execute a bond guaranteeing payment of any laborers' or materialmen's claims. The court also noted that laborers and materialmen have a lien only upon the land and improvements and not upon the amounts due under the contract. In holding that the seizure was proper and that the payments due from the owner to the contractor were not based on a contingency, the court stated:
"The seizing creditor is not seeking to garnishee some future uncertain contingent sum of money. It seeks to seize under a garnishment a certain definite sum that has been determined to be due.... This amount was not contingent upon anything."
139 So. at 717.
In the case at bar, Houma Aviation was indebted only to Mason and not to any of the laborers or materialmen on the job. Houma Aviation discharged its legal obligation to laborers and materialmen by requiring Mason to execute a bond guaranteeing payment of laborers' and materialmen's claims. The payment seized by Blair, under the terms of the contract and under the facts of this case, was unconditionally due and owing to Mason. "This amount was not contingent upon anything." Id.
Hallmark relies heavily on the case of Cagle Supply of Lafayette, Inc. v. Hinson, 155 So.2d 773 (La.App. 3rd Cir. 1963), writ denied, 245 La. 83, 157 So.2d 230 (1963). Cagle Supply involved the garnishment of sums in the hands of a contractor who had subcontracted with the defendant-debtor. Under the terms of the construction contract, as found by the court in that case, payments due to the subcontractor were conditioned upon the subcontractor settling all claims for labor and materials. Numerous claims and threats of liens had been made known to the contractor prior to the service of the garnishment interrogatories. The subcontractor failed to comply with the terms of the contract by settling the claims for labor and materials. The court found that under the contract no payments were due from the contractor to the subcontractor because the subcontractor failed to settle the labor and material claims; thus, no funds in the hands of the contractor were subject to garnishment by the plaintiff.
The facts in Cagle Supply are distinguishable from the facts in the case at bar. In this case, the trial court found and the record reveals that at the time of the service of the garnishment interrogatories Mason was in substantial compliance with the terms of the construction contract. No liens had been filed against the property at the time of service of the garnishment interrogatories, and Mason was not in default. Under terms of the contract the owner was indebted to Mason for $44,593.90.
Hallmark also relies upon the case of Lindsay v. Brown, 104 So.2d 211 (La.App. 2nd Cir. 1958). The court in Lindsay held that an owner who has knowledge of labor and material claims as well as knowledge of an assignment of funds has the right, as garnishee, to retain in its hands an amount sufficient for its own protection. The court also stated: "A garnishee who has funds in his possession or under control, due and owing to a judgment debtor, is simply a stakeholder and has no real interest in the disposition thereof so long as he is protected against subsequent claims arising from the source of the indebtedness." 104 So.2d at 213 (emphasis added).
The facts and circumstances of the case at bar are also distinguishable from those in Lindsay. At the time of service of the garnishment process upon Houma Aviation, Mason had substantially complied with his obligations under the contract. The owner had no knowledge of any existing claims or liens that had been unpaid by Mason. Additionally, Houma Aviation was protected against liens and default by the surety bond issued by Hallmark.
Hallmark contends in brief that if the judgment of the trial court is affirmed Hallmark will be in the red by some $17,722.40. We do not dispute that this is true, *13 but this is exactly what Hallmark bargained for when it agreed to be the surety for Mason. Hallmark could have checked Mason's credit references and, as a condition for the bond, required that labor and material payments be made directly to the laborers and materialmen by Houma Aviation. For a similar suggestion, see Morehouse Lumber, supra, 139 So. at 718.
We disagree with Hallmark's statement that persons who supply labor and material for a private works project have a vested right in the funds retained by the owner. Laborers and materialmen have a right to file a lien against the owner's property for payment for their services and supplies. As the court in Morehouse Lumber noted, all liens are stricti juris. The liens referred to in the private works act are upon the land and improvements only and are enforceable only when evidenced as provided by the act. See La.R.S. 9:4801 et seq. The owner in this case has protected itself from liens against the land and improvements by requiring a surety bond from the contractor.
Hallmark contends that "to allow garnishment such as the present one to exist under Louisiana law would inflict severe injuries not only upon owners but upon sureties and the contracting industry as a whole. Owners, such as Houma Aviation, would be faced with the prospect of third party creditors seizing funds which the contractor legitimately intends and which the owners have a right to expect shall be paid to subcontractors and materialmen. This diversion of the funds from their rightful purpose may well lead to serious injury to the owner in that he may very well be required to pay twice, i. e. he will have to pay the contractor-creditor and the unpaid materialmen and subcontractors." Hallmark's argument, however, ignores the fact that an owner may protect itself by requiring its contractor to be bonded. Indeed, this is what Houma Aviation did in this case. A surety may protect itself by checking a contractor's credit record and refusing to bond a bad risk.
Hallmark additionally contends that since the garnishment interrogatories were served some two days prior to Mason's request for payment, the seizure was ineffective against the sum due to Mason. As we have previously stated, Application for Payment No. 5 was for work performed up to two days prior to the application. The application dated December 10 therefore covered work done through December 8. It follows that service of garnishment process on December 8 was effective to seize the sum applied for by Mason on December 10 and certified by the architect as being due on December 13. The fact that the architect later revoked the certificate of payment does not take away from the fact that a definite sum was due and owing to Mason at the time the garnishment process was served.
We note, too, that the articles of the Louisiana Code of Civil Procedure dealing with garnishment provide that a debt may be seized even though it is not due.
Article 2411 provides, inter alia, that a garnishee must declare under oath "in what amount he is indebted to [the judgment creditor], even though the debt may not be due." Article 2415 provides that when a garnishee is found to be indebted to the judgment debtor, the court shall order the garnishee to pay the sheriff the indebtedness "when due." These articles provide that a debt may be seized even if it is not technically due on the date of seizure.
Hallmark additionally asserts that as the surety who completed the work it was subrogated to the owner's rights and to the claims of laborers and materialmen which were paid by Hallmark. However, Hallmark's subrogation rights did not arise until the claims were paid and no payments were made until well after the garnishment process was served. At the time of the service of garnishment process, Hallmark was subrogated to no one. Hallmark's contention, therefore, is invalid.
Having found that Blair's seizure was proper and that Hallmark's contentions are invalid, we need not address Hallmark's claim that the seizure was improper and that damages are therefore due.

*14 ARCHITECT'S NEGLIGENCE
Hallmark's final claim is that, in the event we find, as we have, that the seizure was proper, Thibodeaux should be held liable to the surety because of the architect's negligence. Specifically, Hallmark contends that the architects were negligent in issuing Certificate of Payment No. 5 when they knew that the garnishment interrogatories had been filed and that claims of laborers and materialmen had been submitted on the job.
Our courts have held that an engineer or architect owes the same degree of care to the surety as he owes to the owner. Those practicing learned professions, like architects and engineers, must exercise that degree of professional care and skill customarily employed by others of the same profession in the same general area. Calandro Development, Inc. v. R. M. Butler Contractors, Inc., 249 So.2d 254 (La. App. 1st Cir. 1971); American Fidelity Fire Insurance Company v. Pavia-Byrne Engineering Corporation, et al., 393 So.2d 830 (La.App. 2nd Cir. 1981).
While Hallmark points to a number of contract provisions and a number of occurrences that it contends show negligence on the part of the architect, Hallmark introduced no evidence to show what degree of professional care and skill is customarily employed by other architects in the Terrebonne Parish area. From the record before us, we cannot say that Thibodeaux was negligent in handling its duties under the construction contract.
Therefore, for the above and foregoing reasons, the decision of the trial court is affirmed at appellant's costs.
AFFIRMED.
PONDER, Judge, concurring in part and dissenting in part.
I concur in the conclusion that the judgment creditor may seize the money due to the contractor under the facts of this case. Morehouse Lumber & Building Material Co., Inc. v. Jacob & Walker, 18 La.App. 536, 139 So. 713 (2d Cir. 1932).
I dissent from the conclusion that the architect did not violate the duty he owed to the surety, which is the same as that owed to the owner. Under the terms of the contract, the progress payments were due and payable only upon the certificate of the architect, who could withhold the approval to protect the owner. The supervising architect was informed of the seizure several days before the progress payment was applied for and approved. Under these circumstances, I am convinced that the architect should withhold approval and probably would have had there been no bond to protect the owner. The approval of the payment, together with Mr. Pierce's comment that "... we do have a bond," constitute, I believe, a cavalierly disregard for the welfare of the surety.
I believe, too, that the majority's reliance upon the locality rule is misplaced. The rule has been abrogated in the case of some doctors, Ardoin v. Hartford Accident and Indemnity Company, 360 So.2d 1331 (La. 1978), together with comments that throw doubt upon the continued viability of the rule, as applied to all professions.
I therefore dissent.
NOTES
[1] This case was consolidated with another suit which sought to garnish funds due Mason from Houma Aviation. Millard Blanchard d/b/a Blanchard Electrical Service v. Robert C. Mason, General Contractor, and Hallmark Insurance Company, No. 14339 on the Docket of the First Circuit Court of Appeal. The rights velnon of Blanchard to any of the proceeds due Mason from Houma Aviation have not been briefed and will not be considered in this judgment.
[2] A. F. Blair Company, Inc. v. M & H Engineers and Construction Co., et al. No. 178,172 on the Docket of the Nineteenth Judicial District Court, East Baton Rouge Parish, Louisiana.
[3] The difference between the amount applied for and the amount certified was due to retainages and work which the architect felt had not been properly completed.
[4] La.C.C.P. art. 2414 provides:

"The clerk shall cause written notice of the filing of the garnishee's answer to be served promptly upon the seizing creditor in the manner provided by Article 1314.
"Unless the creditor files a contradictory motion traversing the answer of the garnishee within fifteen days after service upon him of the notice of the filing of the garnishee's answer, any property of the judgment debtor in the possession of the garnishee and any indebtedness to the judgment debtor which the garnishee has not admitted holding or owing shall be released from seizure. A new seizure may be made of such property or indebtedness by filing a supplemental petition and serving additional interrogatories."
[5] La.C.C.P. art. 2415 provides:

"When the garnishee admits in his answer, or when on trial of a contradictory motion under Article 2413 or Article 2414 it is found that he has in his possession property belonging to the judgment debtor or is indebted to him, the court shall order the garnishee to deliver the property immediately to the sheriff or to pay him the indebtedness when due. Delivery or payment to the sheriff discharges the garnishee's obligation to the judgment debtor to the extent of the delivery or payment.
"This article does not apply to garnishment of wages, salaries, or commissions."