## CREEVY et al. *v.* CUMMINGS et al.

The master of a steamer, which had sunk with its cargo, may, in the absence of the owner of
the cargo, employ persons to recover the submerged property; and, in the absence of any
agreement on the subject, the law will imply a promise to pay a reasonable compensation
for its recovery. In estimating the compensation, the skill and science employed, and the
exposure and peril to which the operation exposed the parties, should be taken into con-
sideration.

Where the judgment of a court appears to have done justice between the parties, any error
of the judge as to the legal principles which he applied to the case will be disregarded.

CREEVY
v.
CUMMINGS.

APPEAL from the First District Court of New Orleans, *McHenry*, J. *Upton*, for the plaintiffs, cited *Talbot* v. *Seaman*, 1 Cranch, 1. *Coulon* v. *Neptune*, 1 Pet. Ad. Dec. 358. Hughes on Isur. 347. *Warder* v. *Belle Creole*, 1 Pet. Ad. Dec. 42, 80. *Matter of the Sarah*, 1 Rob. Ad. Rep. 263. *Tyson* v. *Prior*, 1 Gallison, 133. *Rowe* v. *Brig Blane*, 1 Mason's R. 377. *Hand* v. *Elvira*, Gilpin's R. 60. *Frances Mary*, 2 Hagg, R. 89. *William Beckford*, 3 Rob. Ad. R. 355. 1 Sumner R. 400. 2 Story, C. C. 195. *Howland's* case, 7 vol. Mass. Law Rep. p. 377. *Sprague's* case, 6 Ib. p. 14. *Frost*, on the same side. *Hunton* and *Grymes*, for the appellants. The judgment of the court was pronounced by

SLIDELL, J. The steamer Rodolph, laden with cotton, was sunk in Red river. The plaintiffs at the time were the owners of a steamer called the Bell Boat; this boat was furnished with steam pumps, a diving-bell, submarine armour, and other implements adapted to the recovery of property submerged in water, and was employed in that business on the Mississippi and its tributaries. This boat happened, at the time of the disaster, to be in the Red river, some fifty miles distant from the Rodolph. A messenger was dispatched a few days afterwards to obtain her assistance. On her arrival at the wreck negotiations took place between the captain of the Rodolph and the captain of the Bell Boat, which resulted in a definite agreement with regard to the compensation for raising the steamer; but as to the cotton, it was vague. *Welch*, the captain of the Rodolph says, in substance, that the understanding was that for saving the cotton they were to be entitled to the same compensation that he, *Welch*, would have been entitled to, if he had saved it. Another witness says, the words used by *Welch*, were: "I will abandon you all the cotton you can save." Under this indefinite arrangement the intention of the parties seems to have been that, the salvors should get what they could from the owners of the cotton, and look to them only.

The district judge gave the plaintiffs, as the remuneration for their services in saving the cotton,—one half of its nett proceeds, at its sale in New Orleans, at auction, under a consent order; also the sum of $680, the amount of freight advanced by the plaintiffs for bringing the cotton from Red river to the city. From this decree the defendants have appealed. They declare their willingness to pay such sum as the court may deem a reasonable and just compensation for the services rendered, but contend that the allowance made by the district judge was extravagant, and that he erred in the legal principle advanced in his opinion, which was, "that the plaintiffs ought not only to be paid a fair and equitable compensation for their labor and skill; but that they ought to be liberally rewarded."

The evidence shows that the current of the Red river, at the place of the disaster, was strong, the weather inclement at the time, the deposit of mud upon the boat and cargo was rapid. and the difficulty of raising the submerged boat and cargo such that the loss would have probably been almost total, but for the interposition and services of the plaintiffs. The machinery and apparatus are proved to be ingenious and costly. The officers and crew of the Bell Boat acted with zeal and fidelity, under circumstances of bodily exposure at an inclement season. Their labors in going beneath the water were not only arduous, but involved some personal danger. The time occupied in raising the boat and cargo was about four weeks.

The question has been pressed at bar by the learned counsel for the defend-

ants, whether we have a right, in the case of salvage upon inland waters, to follow the rules which are laid down by courts of admiralty with regard to maratime salvage. Those courts do not confine themselves, in their assessment of salvage, strictly to a compensation for work and labor done; but from considerations of public policy, the interests of commerce, the benefit and security of navigation, and the value of human life, estimate a salvage reward upon an enlarged and liberal scale. We have searched in vain for authority upon this question, and shall not attempt to settle it, because we do not deem it indispensable for the determination of this cause.

If the court below has not in fact adjudged more than a reasonable and just compensation, we have no right to disturb the decree. The captain of the Rodolph, in the absence of the owners of the cotton, had certainly a right to employ the services of the plaintiffs for the recovery of the submerged property; and as there was no stipulation of a rate of compensation the law implies a promise to pay a reasonable compensation. Now, in estimating this reasonable compensation, we may consider the plaintiffs outlay for the building of their boat, the expense of the officers and crew, the infrequency of employment, the time expended in saving the property, the inefficiency of ordinary means to accomplish its recovery, the science and skill exhibited by the plaintiffs in the construction and use of the apparatus, the bodily exposure and peril, the result of all which has been a benefit to the defendants. We are certainly at a loss to see why skill and science are not to be taken into the account in a case of this sort, as well as mere bodily labor; and if the labor was under circumstances accompanied by bodily exposure and peril, that also is a fair subject of consideration. Tested, under the evidence, by this merely equitable standard, and throwing out of view any considerations of public policy or liberality, we cannot say that the amount adjudged exceeds a fair and equitable compensation; and as the decree appears to us to have done justice between the parties, we must let it stand, whether the district judge was right or not in the legal principles which he applied to the case.

As to the freight paid by the plaintiffs for bringing the cotton to New Orleans, it seems to us high. But it is shown that the bales, from having been submerged, were saturated with mud and water, so as to render them very heavy and difficult to handle; and the district judge thought himself warranted by the evidence, in considering it not an excessive charge for conveying cotton in that condition. *Judgment affirmed.*