256 So.2d 688 (1972)
Alvin J. SHOWS, Plaintiff-Appellant,
v.
Wayne WILLIAMSON et al., Defendants-Appellees.
No. 11715.
Court of Appeal of Louisiana, Second Circuit.
January 4, 1972.
Rehearing Denied February 1, 1972.
*689 McKinley, Dimos & Brown by J. N. Dimos, Monroe, for plaintiff-appellant.
Snellings, Breard, Sartor & Shafto by Kent Breard, Monroe, for Wayne Williamson and Allstate Ins. Co., defendants-appellees.
Before AYRES, BOLIN and PRICE, JJ.
En Banc. Rehearing Denied February 1, 1972.
AYRES, Judge.
This is an action in tort wherein plaintiff seeks to recover from the named defendant and his liability insurer, damages for personal injuries sustained, for medical and hospital expenses incurred, and for future loss of income as a result of his having been struck by an automobile driven by defendant Williamson.
While crossing from the north to the south side of Forsythe Avenue east of its intersection with Nineteenth Street in Monroe, Louisiana, at approximately 9:30 p. m., on June 5, 1968, plaintiff was struck by a 1963 Volkswagen being driven by defendant.
Plaintiff charges that defendant was guilty of negligence in that he was careless, reckless, unable to properly control his vehicle because of excessive speed, and that this negligence was the proximate cause of the accident.
Defendant contends that plaintiff was guilty of negligence, which was the sole cause of the accident, in that he failed to keep a proper lookout, failed to yield the right of way to which defendant was entitled, and ran from a place of safety directly into the path of defendant's vehicle in disregard of the care and caution required of him. Defendant denies any negligence on his part, and, in the alternative, asserts that, even if he should be found guilty of negligence, the negligence of plaintiff contributed to the accident and bars his recovery.
Plaintiff requested a jury trial, and the jury returned a verdict in which it found that defendant was guilty of negligence which proximately caused the accident and that plaintiff was also negligent; however, plaintiff's negligence was not found to have been a contributing factor or a proximate cause of the accident. An award of $18,000 was made to plaintiff. A judgment was accordingly rendered and signed.
Defendant timely applied for and was granted a new trial. A second jury returned *690 a verdict which not only exonerated defendant but found plaintiff guilty of negligence which proximately caused the accident. Accordingly, judgment was rendered and signed dismissing plaintiff's action, and plaintiff appealed.
On appeal, plaintiff contends that the trial court erred by granting a new trial, that the trial court, in the second trial, erred by failing to allow plaintiff's counsel to argue to the jury, in rebuttal, the doctrine of "last clear chance," and that the verdict and judgment favorable to defendant in the second trial are erroneous. Plaintiff finally insists that a new trial should be granted so that the "last clear chance" doctrine may be argued to the jury.
Forsythe Avenue, at the point where the accident occurred, is a two-lane, hard-surfaced street, approximately 21 feet wide running in an east-west direction. Nineteenth Street forms a T-intersection with Forsythe Avenue approximately 123 feet west of the point where the accident occurred, and there is a caution light favoring Forsythe Avenue at this intersection. There is no pedestrian crosswalk at the point where the accident occurred.
Plaintiff was unable to give any testimony concerning his activities immediately prior to the accident or concerning the actual occurrence of the accident because he could not remember anything connected with the event.
The testimony established that immediately prior to the accident, plaintiff and Joe Shows, plaintiff's brother, were attempting to start an El Camino automobile which had stalled in a parking lot located on the north side of Forsythe Avenue. They had managed to push the El Camino partially into the westbound lane of traffic on Forsythe Avenue when Robert Coates, an acquaintance, passed by and offered his assistance in starting the El Camino. With plaintiff and Joe Shows standing on the right and left rear, respectively, of the El Camino, Coates steered his jeep into a position so that the jeep's front bumper touched the rear bumper of the El Camino. Joe Shows walked forward to the driver's door of the El Camino, and plaintiff began moving along the right side of the jeep toward the rear. Plaintiff passed behind the jeep and began crossing Forsythe Avenue, moving in a southerly direction. While he was in the eastbound lane of travel on Forsythe Avenue, he was struck by the Volkswagen driven by defendant.
Defendant testified that he was driving his Volkswagen easterly on Forsythe Avenue at approximately 25 miles per hour after having turned on Forsythe Avenue from Eighteenth Street and proceeding through the caution light at Nineteenth Street. He saw the headlights of two vehicles meeting him on Forsythe Avenue, and, as he was opposite the first vehicle, he was able to see that the second vehicle was pushing the first. As he was even with the front of the second vehicle, plaintiff darted out from behind this vehicle directly in front of his Volkswagen. Defendant testified that he had no time to take any evasive action or to even apply his brakes before the right front of his Volkswagen struck plaintiff.
Defendant was the only one who actually saw the impact. Coates testified that the last time he saw plaintiff, plaintiff was behind his jeep and near the center of Forsythe Avenue. Coates turned forward in his jeep, saw defendant's Volkswagen about even with the El Camino in front of him, and then he heard the sound of the impact as the accident occurred. On the second trial, Joe Shows testified that he heard, but did not actually see the impact. He said that when he last saw plaintiff he was about one-half foot off the south side of Forsythe Avenue and moving away from the street. He placed defendant's Volkswagen several car lengths west of the El Camino at this time; however, he could not explain how plaintiff came back to a position so that he could have been struck by defendant.
*691 Tommy Poindexter, the police officer who arrived at the scene minutes after the accident, testified that plaintiff was lying twelve feet from the south edge of Forsythe Avenue, and that defendant's Volkswagen was approximately fifteen feet east of where plaintiff was lying. Because there was no debris, he was unable to determine where the impact occurred. There were no skid marks indicating that defendant had suddenly and forcefully applied his brakes.
Joe Shows testified that defendant was traveling at approximately 45 to 60 miles per hour. Defendant estimated his speed at 25 miles per hour. The fact that defendant stopped his Volkswagen approximately fifteen feet beyond the point where plaintiff was lying without the necessity of forcefully braking, as indicated by the lack of skid marks, clearly shows that he was driving within the speed limit of 35 miles per hour.
Our review of the voluminous record convinces us that the jury verdict exonerating defendant of negligence and finding plaintiff guilty of negligence which proximately caused the accident and the judgment accordingly rendered dismissing plaintiff's action are correct.
We conclude that plaintiff left a place of safety behind Coates' jeep and attempted to cross Forsythe Avenue directly in the path of defendant's Volkswagen at a point where there was no pedestrian crosswalk. Had he but looked, he could have seen the headlights of defendant's approaching Volkswagen. Defendant saw plaintiff as soon as plaintiff was visible, but he did not have time to do anything to avoid striking plaintiff. The facts of this case are such that defendant did not have a chance to avoid the accident. No negligence on the part of defendant is shown; whereas, the actions of plaintiff are clearly negligent.
Plaintiff contends that the trial court erred by granting defendant a new trial after the jury had returned a verdict favorable to plaintiff awarding him $18,000 and judgment had accordingly been rendered.
As pointed out by the trial court in written reasons for ordering a new trial, LSA-C.C.P. 1973 provides that "A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." (Emphasis ours.) Appellate courts have concluded that this article vests "wide discretion [in the trial court] in granting new trials" when such a course of action best serves the end of justice, and that "[t]he trial court has virtually unlimited discretion to order a new trial, even on its own motion, when it is convinced that a miscarriage of justice has resulted." (Emphasis ours.)
Strobel v. Schlegel, 145 So.2d 664, 667 (La.App., 4th Cir. 1962cert. denied, 1962); Renz v. Texas & Pacific Railway Company, 138 So.2d 114, 124 (La.App., 3d Cir. 1962cert. denied, 1962).
It is equally clear that the appellate courts will not interfere in decisions of trial courts on matters of this character, "unless there has been a clear abuse of this discretion." (Emphasis ours.) Strobel v. Schlegel, supra.
In Soileau v. Fusilier, 237 So.2d 92, 93 (La.App., 3d Cir. 1970), Strobel and Renz, supra, were cited for the proposition that the trial court has almost unlimited discretion to grant a rehearing (new trial) under Article 1973 to prevent a miscarriage of justice.
Our review of the written reasons assigned by the trial court in the order granting a new trial convinces us that this order was granted only after a thorough analysis of the pertinent statutes and jurisprudence, a painstaking review of the evidence adduced at the trial, and a scholarly appraisal of the possible ramifications of the granting of a new trial in a jury case. The written reasons for granting the new *692 trial ended with the trial court's conclusion that "the preponderance of the evidence was clearly against the jury's conclusion that the plaintiff's negligence was not a legal cause and that defendant had, but failed to exercise, the last clear chance to avoid the accident."
In Adams v. Webster, 25 La.Ann. 113, 114 (1873), it was held that when a trial court is convinced that a jury's verdict is wrong "it is his duty to grant a new trial, and not indirectly deprive the party of a trial by jury, by rendering what he believes to be an improper and unjust judgment with the view of having it reversed on appeal." In Renz v. Texas & Pacific Railway Company, supra, the court stated that a trial court has the right and the duty to set aside a jury's verdict if the court is convinced that the verdict is contrary to the law and the evidence.
In the instant case, the trial court fully carried out its duty in this respect. There is no merit in plaintiff's contention that a new trial was improperly granted.
Neither is there any merit in plaintiff's contention made before us that a new trial should be granted so that the doctrine of "last clear chance" may be argued to the jury. In his argument before the jury, plaintiff's counsel did not discuss the doctrine of "last clear chance." Counsel for defendant, because this was not mentioned by counsel for plaintiff, elected not to argue it in his presentation to the jury. On rebuttal, counsel for plaintiff began a discussion of this doctrine, and counsel for defendant objected that it was not a proper matter for rebuttal. The trial court sustained the objection.
Our review of the record discloses that the trial court fully explained the doctrine of "last clear chance" in the charge to the jury.
Without deciding that an error was made in failing to allow counsel for plaintiff to argue "last clear chance" in the circumstances of the instant case, any possible error in this respect is of no consequence because this court has the statutory authority to "render any judgment which is just, legal, and proper upon the record on appeal." LSA-C.C.P. Art. 2164. The rule in Louisiana is that when the review of a record clearly indicates that the judgment of the lower court is correct and that justice has been done, that judgment will not be overturned because of an error which did not affect the merits.
Creevy v. Cummings, 3 La.Ann. 163 (1848); Johnson v. Petit, 236 So.2d 304, 306 (La.App., 4th Cir. 1970).
Our review of the record convinces us that the judgment rendered in favor of defendant is manifestly just and correct.
For the reasons assigned, the judgment is affirmed at plaintiff-appellant's costs.
Affirmed.