311 So.2d 48 (1975)
Elmer NAQUIN, Plaintiff-Appellee,
v.
MARYLAND CASUALTY COMPANY, and Ford Motor Company, Defendants-Appellants.
No. 4846.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1975.
On Rehearing March 19, 1975.
Rehearing Denied April 15, 1975.
Writ Refused June 13, 1975.
*49 Davidson, Meaux, Onebane & Donohoe by V. Farley Sonnier, Lafayette, for defendant-appellant Ford Motor Co.
L. H. Olivier, Lafayette, for defendant-appellant City of Lafayette.
Domengeaux & Wright by William P. Rutledge, for plaintiff-appellee.
Harmon F. Roy, Mouton & Roy, Lafayette, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
MILLER, Judge.
Defendants Maryland Casualty Company (liability insurer for the City of Lafayette) and Ford Motor Company appeal the $65,000 jury award to plaintiff Elmer Naquin for personal injuries caused when a Lafayette garbage truck (on a Ford chassis) ran into the rear of Naquin's car. He was waiting for a favorable traffic light. *50 Each defendant contends the other's negligence was the sole legal cause of the accident. We affirm.
On July 26, 1968 Naquin stopped for a traffic light. While waiting, his vehicle was struck from the rear by a fully loaded Ford garbage truck owned by the City of Lafayette and driven by its employee Gilbert Comeaux. The suit against the city's insurer Maryland Casualty is based upon Comeaux's alleged negligence in running into Naquin's properly positioned vehicle, and upon the alleged negligence of the city's maintenance department in failing to properly service the garbage truck. The claim against Ford is based upon its alleged failure to supply proper brake linings when it manufactured and sold the truck. Third party actions seeking contribution were filed by Ford against the city, Maryland, and Comeaux, and by Maryland against Ford. The jury awarded Naquin $65,000 and found negligence on the part of the city and Ford to be a legal cause of the accident. The trial judge severed Ford's third party claim against the city, Maryland, and Comeaux, and the judge ruled that the city and Maryland were liable for contribution to Ford on Ford's third party claim. There was no decision affecting Comeaux.
The most impressive assignment of error raised by both Maryland Casualty and Ford is their contention that the jury's verdict was influenced by information not admissible and not produced in evidence. This argument was presented to the trial court in a motion for new trial. The motion was set for trial, but no juror was subpoenaed to testify. No evidence was presented to support one juror's ex parte statement which had been attached to one application for new trial. The statement indicated that during deliberations two jurors informed the remaining jurors that plaintiff had rejected a settlement offer of $70,000, and that this influenced five jurors to find for plaintiff.
The trial court is obliged to see that justice is done between litigants. Even in jury cases, if the judge believes the verdict is unauthorized and unjust, he should grant a new trial. Matthews v. New Orleans Terminal Co., 45 So.2d 547 (La.App. Orls. 1950). See also, William Volker & Company of Louisiana v. Allen, 96 So.2d 506 (La.App. 2 Cir. 1957).
These rules do not help defendants because the time to prove the alleged jury tampering was at the scheduled hearing on the motion for new trial. Since no attempt was made to present evidence to support this serious charge, we fail to find manifest error in the trial court's rejection of the jury tampering charge.
There are several lines of testimony relating to the alleged negligence of the city's maintenance department, its driver, and Ford. The city's negligence was established by the fact that this garbage truck (and the three exactly like it) were operated on a 24 hour a day, 7 day a week, schedule. During each eight hour shift the truck was stopped some 1100 to 1500 times. Although the truck was rated to carry 30,000 pounds, the weight checks showed that they usually carried between 34,000 and 38,000 pounds when fully loaded. The truck that struck Naquin's vehicle was fully loaded and on its way to the city dump. There is evidence that all four of the new Ford trucks had braking problems. The only maintenance performed by the city's maintenance department consisted of frequent brake adjustments to meet the complaints that the brakes were not holding. Testimony in the record by Comeaux's fellow employee indicates that the brakes had been adjusted only a few minutes before the accident. The jury properly rejected the defense that the city was free from fault.
The case against Ford is premised on the finding that Ford manufactured and supplied (four) garbage trucks to the city *51 with substandard brake linings on the rear wheels. The linings (or blocks) were supposed to be 3/4 inch thick when installed, and there is convincing evidence that these trucks were sold with 5/8 inch thick linings. Ford impressively denies this line of testimony and produced convincing testimony to support its contention that even if 5/8 inch linings had been supplied, this would not have contributed to the accident. But the record is replete with testimony that the four trucks which were some six months old (and had travelled some 7,000 miles) were constantly presenting brake problems. These problems were brought to Ford's local dealer, but a complete check was never performed. On each occasion, the brakes were adjusted and the trucks returned.
After the accident the wheels were removed for the first time and it was immediately determined by the city's maintenance department that the brake linings did not meet Ford's specifications. The linings were changed on all four trucks and the brake problems disappeared. This line of testimony was supported by one driver's description of an accident caused by defective brakes when the new trucks were being delivered to Lafayette.
Ford points to the fact that the city is unable to produce the brake shoes and lining removed from the truck. The city explained that these shoes were available for some eighteen months, had Ford desired to inspect them, but they were thrown away during a cleanup compaign. Shoes and linings from a sister truck were presented in evidence. Ford made an impressive attack on the city's attempt to explain that these exhibits supported its contentions.
While we have reservations concerning the finding that Ford's four trucks were manufactured and sold with defective brake linings, we do not find manifest error in the jury determination.
Maryland Casualty's and Ford's burden of showing error is not discharged in a case involving issues of fact by pointing to conflicts in the evidence. Davitt v. Long-Bell Farm Land Corporation, 162 La. 59, 110 So. 88 (1926). Where issues of fact are appealed, appellants are required to show the verdict is manifestly erroneous in order to support a reversal. Falgout v. Johnson, 191 La. 823, 186 So. 349 (1939); Glorioso v. Glorioso, 223 La. 357, 65 So.2d 794 (1953). Questions of credibility and veracity are for the trier of fact. Hopson v. Allstate Insurance Company, 286 So.2d 99 (La.App. 3 Cir. 1973).
Naquin's vehicle was struck a severe blow from the rear by a truck weighing about nineteen tons. Although the medical evidence is far from uniform, there is support for Naquin's claim that he suffered a severe spinal injury which cannot be cured by surgery because of his pulmonary and orthopedic complications. In reaching this conclusion the jury accepted medical evidence provided by a discogram and rejected the negative myelogram.
Relevant here is Ford's contention that it was deprived of testimony of its medical expert because of the trial judge's ruling that under the sequestration rule, all witnesses had to remain in the witness room through the entire trial (which lasted eight days). We understand that this ruling effectively prevented Ford from presenting live testimony of its New Orleans physician. Ford further complains that this injustice was compounded by the court's refusal to allow the jury to hear the entire deposition. We are unable to defend the trial judge's rulings, but we find these errors did not improperly influence the jury's verdict. Although Ford was not permitted to read substantial parts of it's medical expert's (Dr. Levy's) testimony supporting his reasons for rejecting the discogram findings, a reading of the entire deposition does not require a reversal of the jury's consideration of this test. The fact that some physicians have grave reservations concerning the validity of the discogram test was made known to the jury.
*52 When a review of the record indicates the trial court judgment is correct and that justice has been done, the judgment will not be overturned because of errors which did not affect the merits. LSA-C.C.P. 2164; Shows v. Williamson, 256 So.2d 688 (La.App. 2 Cir. 1972). When error is detected, it must be weighed to determine whether such error is harmless or prejudicial. Lauro v. Travelers Insurance Company, 261 So.2d 261 (La.App. 4 Cir. 1972). When there is evidence before the trier of fact which, upon reasonable evaluation, furnishes a factual basis for the trial court's finding, the appellate court, on review, should not disturb this factual finding absent manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
We fail to find manifest error in the $65,000 award and in the finding that the negligence of the city and Ford contributed to this accident.
The trial court judgment is affirmed at appellants' costs.
Affirmed.

ON REHEARING
Before HOOD, CULPEPPER, MILLER, WATSON and HUMPHRIES, JJ.
MILLER, Judge.
Defendant Ford Motor Company's application for rehearing was granted to review our holding that the jury had a reasonable basis to hold Ford negligent and find that its negligence was a legal cause of the accident. A careful review of the record has convinced this panel that there is no reasonable basis for holding Ford liable.
Reference is made to our original opinion for a statement of facts and the trial court's findings.
Ford was held negligent for manufacturing and supplying the garbage truck with 5/8 inch thick brake linings (or blocks) when its own design called for 7/8 inch thick blocks. We noted in our original opinion that Ford impressively denied that the trucks were manufactured or delivered with 5/8 inch blocks. Ford produced convincing testimony to support its contention that even if 5/8 inch blocks had been supplied, this would not have contributed to the accident. We nevertheless concluded that the testimony which indicated the trucks had brake problems was sufficient to give a reasonable basis for concluding that 5/8 blocks might have been installed by Ford and might have been a legal cause of the accident. We were also influenced by the fact that there was testimony (not confirmed, by the way) that the truck had been returned to Ford's local dealer for brake repairs, but the dealer only adjusted the brakes.
We now hold that these factors do not furnish a sufficient basis to hold Ford responsible for the accident. There is no evidence that Ford Motor Company is responsible for its local dealer's lack of care. There is no evidence to support an agency relationship between the dealer and Ford. Ford is sued as manufacturer of a product said to have been manufactured in a defective manner. The dealer was not named as a party defendant and therefore the want of care, if any, on the part of the dealer, does not establish Ford's negligence.
Plaintiff suggests that the city didn't check the brake linings because of fear of voiding their warranty. Brake linings (blocks) were expressly excluded from the warranty. Tr. 420.
We are now convinced that even if 5/8 inch blocks were installed with this truck was manufactured, the brakes had seated. When brakes are seated, maximum braking efficiency is achieved. This truck and its sister trucks were admittedly overworked and did not have the benefit of preventative maintenance. They were frequently, if not daily, operated with loads substantially in excess of the load limit expressed in the manual which accompanied the vehicle. *53 The drivers and maintenance staff testified that they didn't make an effort to discover the limitations and restrictions placed on operation of the vehicles. The garbage trucks were ordinarily stopped some 4,500 times per day, seven days per week. They had been in service for a six month period.
The testimony that the trucks had brake problems was not supported by records maintained by the cityalthough those records were detailed to the extent of noting the replacement of light bulbs. To keep the testimony of Ford's brake problems in context, all witnesses questioned on the point confirmed that all garbage trucks (whether of Ford manufacture or not) had brake problems. The "Flying Tiger Operation" (so nominated by the maintenance department) was calculated to cause brake trouble.
The fact that the trucks stopped better after new blocks were installed does not establish that the trucks were manufactured and delivered with defective brakes. Trucks which have been operated for a six to seven month period, sometimes under overloaded conditions, for 24 hours a day, 7 days a week, making some 4,500 stops per day, are expected to stop better after new brake blocks have been installed.
According to the evidence, the brakes were frequently adjusted on the road when the drivers complained of difficulty in stopping their overloaded trucks. Because of the heated conditions of the blocks and drums, it is difficult to adjust brakes on the road. This may explain the one line of skid marks left by the garbage truck leading up to the accident site. In our original opinion we referred to testimony indicating that the truck's brakes were adjusted a few minutes before this accident. We now take note of the fact that brakes are most effective just before skid marks are laid down.
We are impressed by the fact that the brake blocks which were allegedly negligently furnished by Ford were not introduced in evidence. This notwithstanding the fact that the city's insurer Maryland (the party that introduced brake blocks which allegedly came from a sister truck) knew that it intended to make Ford a party defendant. The first attempt to measure the thickness of the blocks was made after the brakes had been applied some 630,000 timesand at that time, the ends of the brake blocks were measured to be 5/8 inch thick.
The City's mechanic Cluse did not confirm Kimbrough's testimony that the blocks were only 5/8" thick. At Tr. 463 he testified that he didn't know how thick they were. He opined that the blocks showed more wear in the center than at the ends, but he did not suggest that the brakes were not 100% seated.
Considering the operating conditions and lack of preventative maintenance, we find that plaintiff failed to prove that, if Ford furnished 5/8 inch blocks rather than 7/8 inch blocks, the 1/8 inch less brake block was in any way related to this accident. There is no credible evidence in the record to support plaintiff's contentions that Ford's negligence was a legal cause of this accident.
Plaintiff argues that Ford's expert Mr. Strejan, admitted that 3/4 inch blocks would provide quicker and more efficient braking than 5/8 inch blocks. At Tr. 1176 he was asked if a 3/4 inch block would have given maximum efficiency more quickly than a 5/8 inch block? His affirmative answer must be read in context with his testimony at Tr. 1171 where he was asked to assume 5/8 inch blocks to begin with, he testified that the braking efficiency ". . . would improve up to the point of full contact with all the blocks, and then, your efficiency no longer goes up." Strejan's testimony uniformly supports his thesis that once seated, 5/8 inch blocks would furnish maximum braking efficiency until the blocks wore out.
*54 In conclusion, we find that if 5/8 inch blocks were furnished on the Ford truck, the blocks had seated and were capable of affording 100% braking effect when properly adjusted, maintained, and applied.
The trial court judgment awarding damages against Ford Motor Company is reversed and set aside. The judgment recognizing the third party demands of both Maryland Casualty Company and Ford Motor Company are also reversed and set aside. The remainder of the trial court's judgment is affirmed.
We affirm the jury award of $65,000 to plaintiff Elmer Naquin against defendant Maryland Casualty Company together with legal interest from date of judicial demand until paid. This award is subject to Maryland's policy limits. All court costs at trial and on appeal are taxed to defendant Maryland Casualty Company.
Affirmed in part; in part, reversed and rendered.
CULPEPPER, J., dissents in part and assigns written reasons.
WATSON, J., dissents for the reasons assigned by CULPEPPER, J.
CULPEPPER, Judge (dissenting in part).
I dissent from the part of the majority decision on rehearing which holds that there was no reasonable evidentiary basis for the jury to find that Ford Motor Company was negligent in installing substandard brake linings. It is my view that there was sufficient credible testimony by the City's truck maintenance personnel for the jury to find as a fact that the brake linings were only 5/8 of an inch thick when these new trucks were delivered to the City. The specifications required brake linings 3/4 of an inch thick. At the time of the accident, the truck was only six months old and had been driven only about 7,000 miles. It was still on the warranty of one year or 24,000 miles. The City maintenance crews had not removed the wheels or inspected the brake linings for fear of losing whatever warranty rights they had against Ford Motor Company. Instead, the City had frequently sent the truck to the local Ford dealer for brake repair.
Mr. M. M. Kimbrought, a mechanic of ten years experience, was City maintenance superintendent at the time. He was qualified as an expert automobile mechanic. Kimbrough testified that after the accident occurred this truck was brought to the maintenance barn and the back wheels were removed. He discovered an unusual "wear" pattern on the brake linings. The linings were measured and it was found that they were 5/8 of an inch thick. In fact, the other three trucks were also checked, and all three were found to have 5/8 of an inch linings, rather than 3/4 of an inch required by the specifications.
The majority on rehearing does not seriously contend the brake linings were 3/4 of an inch as required. It bases its holding on the inference that even if the linings were only 5/8 of an inch, they had worn sufficiently to be seated uniformly and therefore provided maximum efficiency. In my view, there was ample evidence for the jury to conclude otherwise.
It was the testimony of Mr. Kimbrough that the brake linings being too thin resulted in overheating, excessive wear and glazing, all of which resulted in inefficient braking.
Kimbrough testified that before the accident the drivers complained frequently of the brakes not holding. After the accident, the correct size linings were installed and the brake trouble was substantially eliminated.
Ford Motor Company's own expert, Mr. Strejan, finally admitted under cross-examination that 3/4 inch linings would provide quicker and more efficient braking than 5/8 of an inch linings. (Tr. 1176)
Kimbrough's testimony is also corroborated by Joseph Cluse, maintenance mechanic *55 for the City. Cluse testified that immediately after the accident he assisted in taking off the rear wheels and inspecting the brake linings. He says the lining was worn unevenly. It was worn more in the center than normal. (Tr. 456)
Another fact which corroborates the testimony of these witnesses that the brake linings were defective, is that when the emergency brake system was applied, only the right rear tire skidded. The left rear tire left no skidmarks. This would certainly indicate there was something wrong with the braking system.
The majority stresses the heavy use of the truck, 4,500 stops a day, seven days a week for six months. In view of the uncontradicted fact that the truck had been driven only about 7,000 miles of a 24,000 mile warranty, I fail to understand the argument that hard use excuses Ford for admittedly substandard brake linings.
"When there is evidence before the trier of fact, which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error." Canter v. Koehring Company, La., 283 So.2d 716 (1973). I think this rule is particularly applicable in the present case. Here we have a conflict between the testimony of the City maintenance mechanics and Ford Motor Company's experts. Ford's experts never saw this truck nor the linings in question. They testified on a purely theoretical basis.
As the court stated in Canter, "where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." I think these rules are clearly applicable in the present matter.
For the reasons assigned, I respectfully dissent.