386 So.2d 920 (1980)
Curt E. BOWERS, Plaintiff-Appellee,
v.
D. C. GREENE and Greene's Marine Products, Inc., Defendants-Appellants.
No. 7455.
Court of Appeal of Louisiana, Third Circuit.
May 21, 1980.
Writ Refused September 12, 1980.
*921 Charles L. Bull, Jr., Welsh, for defendants-appellants.
Marcantel & Marcantel, Bernard N. Marcantel, Jennings, for plaintiff-appellee.
Camp, Carmouche, Palmer, Barsh & Hunter, J. A. Delafield, Lake Charles, for defendant-appellee.
Before CULPEPPER, GUIDRY and DOUCET, JJ.
DOUCET, Judge.
This case was consolidated for trial and appeal with Numbers 7456, Bowers v. Greene's Marine Products, Inc., 386 So.2d 925, and 7457, Calcasieu Marine National Bank of Lake Charles v. Greene's Marine Products, Inc., 386 So.2d 926, on the docket of this Court. Some of the issues are common to all three cases and will be discussed herein, although separate opinions in each case are being rendered on this day.
These cases arise out of a number of business transactions, which the defendants in this suit, D. C. Greene and Greene's Marine Products, Inc., conducted in 1977 for the purpose of moving their boat manufacturing business from Texas to Louisiana. This suit is concerned with a lease that was entered into by the plaintiff, Curt E. Bowers, and the defendants on July 11, 1977.
Plaintiff leased to defendants a small tract of land and a building in rural Jefferson Davis Parish, west of Jennings, Louisiana. According to the terms of the written agreement, the land and building were to be used by defendants as a boat manufacturing plant. Defendants agreed to take immediate possession of the building, as it was, and modify it at their expense, according to their needs and specifications. Plaintiff agreed to construct two additional buildings on the property, "as soon as possible", for defendants' use. The rent provided for in the agreement was $900.00 per month for the original building, and upon their satisfactory completion, $475.00 per month for the second building and $100.00 per month for the third.
Shortly after the lease was executed, a concrete floor was installed in the building, and defendants began moving their manufacturing equipment from Texas. Part of the equipment was moved into plaintiff's building, and part of it was stored in another building in nearby Roanoke, Louisiana. On Saturday, September 17, 1977, plaintiff learned that defendants had removed the equipment from the building in Roanoke. Defendants' rental payments were two months in arrear at that time, and plaintiff became concerned about protecting his lessor's privilege on the equipment in his building.
On Monday, September 19, 1977, plaintiff filed this suit to collect the past due rent. Later, he amended his petition to ask for an additional $2,808.24, which he paid to satisfy a materialman's lien that was filed against his property by the supplier of the concrete used in the floor of the building. In connection with the suit, plaintiff obtained a writ of sequestration of the movable property in the building. The writ was issued on the basis of plaintiff's lessor's privilege and his allegation that defendants would dispose of the property while the suit *922 was pending. Plaintiff also obtained a writ of attachment based on the facts that defendants were nonresidents and that rent totalling $107,100.00 would become due under the terms of the 10-year lease.[1]
Defendants answered plaintiff's petition and reconvened, seeking the cancellation of the lease and damages for plaintiff's allegedly wrongful attachment of their property. In addition, they filed a motion to dissolve the writs. After a hearing on the motion, the district court dissolved the writ of sequestration on the ground that by the time of the hearing the past due rent had been paid.[2] The writ of attachment was maintained, however, on the grounds that defendants were nonresidents and that they were obligated to pay rent that was not yet due under the lease. That judgment was appealed by defendants and affirmed by this Court. Bowers v. Greene, 360 So.2d 639 (La.App. 3rd Cir. 1978), writ denied, 362 So.2d 801 (La.1978).
On April 18, 1979, the trial judge held a pre-trial conference with the attorneys for all of the parties. One of the matters that they dealt with was discovery. Upon the request of one of the attorneys, counsel for defendants agreed to make arrangements for taking the deposition of D. C. Greene, who was living in Texas. In addition, the trial judge verbally ordered the parties to exchange the names of any witnesses, who would be called to testify, at least 10 days prior to the trial. However, he did not issue a written pre-trial order.
On May 1, 1979, counsel for defendants served notice on the other parties that he intended to take the depositions of D. C. Greene, Jack Tethford, Scott Stone, and Kay Greene on May 7, 1979 in Pasedena, Texas. The depositions of Kay Greene and Scott Stone were taken on that date, however, D. C. Greene failed to appear. On May 21, 1979, defendants' attorney mailed a notice to the other parties, informing them that D. C. Greene would be called to testify at the trial. That notice was not received until May 22, 1979, the day before the trial. Because of defendants' failure to comply with his verbal pre-trial order and D. C. Greene's failure to appear and be deposed, the trial judge excluded Greene's testimony at the trial. It was allowed into the record as an offer of proof, but it was not considered by the trial judge in reaching his decisions.
After the trial, judgment was rendered in favor of plaintiff and against defendants in solido in the sum of $17,100.00 for the unpaid rent, plus $2,808.24 for the concrete that was installed in the building. Defendants' reconventional demand was dismissed. From that judgment, defendants appeal. We affirm.
On appeal, defendants argue that the trial court erred in (1) excluding D. C. Greene's testimony, (2) refusing to cancel the lease, (3) rendering judgment in favor of plaintiff for the amount of the unpaid rent, (4) refusing to award damages to defendants for plaintiff's attachment of their property, and (5) awarding to plaintiff the $2,808.24 that he spent for the concrete.

EXCLUSION OF GREENE'S TESTIMONY
In support of their contention that the trial judge erred in excluding D. C. Greene's testimony, defendants argue that the verbal pre-trial order was not binding on them, because LSA-C.C.P. Art. 1551 requires that such orders be written. They further argue that LSA-C.C.P. Art. 1473, which provides sanctions for the failure to appear for a deposition, is not applicable, because it requires that proper notice be served on the party failing to appear, and they contend that a party cannot serve notice on himself.
*923 We would not be inclined to accept those rather technical arguments under any circumstances. They are advanced in the hope that defendants will be allowed to flagrantly disregard an order of the trial court and mislead the other parties with impunity. However, we find it unnecessary to discuss them, since we have determined that defendants were not harmed by the exclusion of the testimony.
In Naquin v. Maryland Casualty Company, 311 So.2d 48 (La.App. 3rd Cir. 1975), 313 So.2d 598 (La.1975), this Court enunciated the following principles:
"When a review of the record indicates the trial court judgment is correct and that justice has been done, the judgment will not be overturned because of errors which [do] not affect the merits. LSA-C. C.P. 2164; Shows v. Williamson, 256 So.2d 688 (La.App. 2 Cir. 1972). When error is detected, it must be weighed to determine whether such error is harmless or prejudicial. Lauro v. Travelers Insurance Company, 261 So.2d 261 (La.App. 4 Cir. 1972). When there is evidence before the trier of fact which, upon reasonable evaluation, furnishes a factual basis for the trial court's finding, the appellate court, on review, should not disturb this factual finding absent manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973)."
Having examined the proffered testimony in light of those principles, we conclude that the alleged error urged by defendants does not afford a basis for the reversal they seek.
It is clear from the trial judge's oral reasons for judgment that even if he had considered Greene's testimony, he would not have accorded any weight to it, because he found that Greene lacked credibility. He based that conclusion on several facts. One was that in dealing with different banks Greene used different financial statements, and there were numerous unexplained discrepancies between two of those statements that were introduced into evidence. Another was that the trial judge felt that by confusing the pleadings and failing to produce proof of ownership after being ordered to do so, Greene had deliberately attempted to mislead him about the ownership of the property attached by plaintiff.
After carefully examining the record, we conclude that the trial judge's unfavorable assessment of Greene's credibility was reasonable. When his testimony is read in light of it, it is clear that it could not help defendants. All of the relevant parts of it that they rely on are contradicted by other more credible evidence. Under those circumstances, we find that the exclusion of Greene's testimony was not prejudicial to defendants.

CANCELLATION OF THE LEASE
Defendants argue that they are entitled to have the lease cancelled for two reasons. First, they argue that plaintiff breached his obligation under LSA-C.C. Art. 2692 to maintain them in peaceable possession of the leased premises. They complain of several actions by plaintiff, none of which the trial judge found sufficient to justify cancellation of the lease. Our review of the record has not shown that finding to be manifestly erroneous.
The most significant act complained of was plaintiff's attachment of the movable property on the leased premises. The mere presence of attached property in the building did not in and of itself constitute a disturbance of defendants' peaceable possession, however. See Salim v. Louisiana State Board of Education, 289 So.2d 554 (La.App. 3rd Cir. 1974), writ denied, 293 So.2d 177 (La.1974). Defendants did not establish that they were denied access to the leased premises or that any actions by plaintiff rendered the property unfit for its intended use as a boat manufacturing plant. Therefore, we cannot say that the trial judge was clearly wrong in concluding that defendants could have conducted their manufacturing activities there if they had wanted to.
Defendants' second argument is that plaintiff breached the lease provision requiring *924 him to construct two additional buildings, "as soon as possible". The trial judge rejected that argument also, concluding that constructing additional buildings would have been a vain and useless act when defendants' rent payments were in arrear and they were not making any attempt to use the leased premises. We agree. We do not believe that the words "as soon as possible" can be reasonably construed to mean that plaintiff was required to have the buildings completed prior to the time that defendants breached their obligation to pay the rent, which was one month after the lease was executed. Since the delay in the construction of the additional buildings resulted from defendants' own failure to comply with the terms of the lease, they cannot rely on it as grounds for cancellation.

UNPAID RENT
In addition to arguing that the rent did not accrue because they were entitled to have the lease cancelled, defendants argue that the payment of the rent had been remitted. In doing so, they rely primarily on D. C. Greene's proffered testimony that subsequent to the execution of the written lease, a Mr. Carl Smith told him on behalf of plaintiff that defendants would not be required to pay rent until after they had completed their move and resumed production. Smith testified that he might have told Greene that he would try to make such an arrangement with plaintiff. However, plaintiff denied ever having agreed to forego collection of the rent. The trial court concluded that defendants had failed to prove that the rent had been remitted. We find no error in that conclusion or the resulting judgment against defendants for the amount of the unpaid rent.

DAMAGES FOR WRONGFUL ATTACHMENT
Defendants base their demand for damages arising out of the attachment of their property on two distinct theories. First, they argue that they are entitled to damages under LSA-C.C.P. Art. 3543, which provides:
"A writ of attachment may be obtained before the debt sued upon is due. If the debt is paid when it becomes due, the costs of the seizure shall be paid by the plaintiff."
Defendants contend that the future debt sued upon in this case, the future rent, never came due because of plaintiff's breaches of the lease entitling them to its cancellation and/or his remittance of the rent. Having decided adversely to defendants on the issue of plaintiff's right to collect the unpaid rent, we find no merit in that argument. Furthermore, we do not believe that the words "costs of the seizure" in the above provision encompass the kinds of damages sought by defendants.
Defendants' other argument is that they are entitled to damages under LSA-C. C.P. Art. 3506, because the writ of attachment was wrongfully issued. However, as we noted earlier, the trial court found in response to defendants' motion to dismiss that the writ of attachment was proper. That judgment, which was affirmed by this Court, has become final. A final judgment upholding the validity of and maintaining a writ of attachment is res judicata on the right to damages for its wrongful issuance. Smith v. Utility & Maintenance Contractors of America, Inc., 301 So.2d 906 (La.App. 2nd Cir. 1974), writ denied, 305 So.2d 539 (La. 1975). Therefore, the trial court's rejection of defendants' demand for damages was correct.

PAYMENT FOR THE CONCRETE
In arguing that the trial judge erred in finding them liable for the cost of the concrete floor installed in the building, defendants rely primarily on D. C. Greene's proffered testimony that he did not order the concrete. As we noted earlier, the trial judge rejected that testimony. Apparently, he accepted plaintiff's contradictory testimony that D. C. Greene had authorized the work. He noted in his oral reasons for judgment that plaintiff's testimony is corroborated by the facts that Greene went to the site when the concrete was in the process *925 of being poured and did not stop the work, defendants were billed for it, and the lease provides that all modifications to the original building are to be at defendants' expense.
We believe that the evidence reasonably supports the trial judge's conclusion. Accordingly, we do not find manifest error in the judgment awarding plaintiff the amount that he spent to cancel the materialman's lien filed against his property.
For the above and foregoing reasons, the judgment appealed is affirmed. All costs of this appeal are taxed to the defendants.
AFFIRMED.
NOTES
[1] Although defendants are nonresidents, jurisdiction over them was obtained by personal service on D. C. Greene in Louisiana. LSA-C. C.P. Art. 6. Thus, this is not an action in rem, LSA-C.C.P. Art. 8, or quasi in rem, LSA-C.C.P. Art. 9.
[2] Since the time of that hearing, plaintiff has amended his petition several times, seeking additional rent as it accrued. On May 15, 1979, when the last supplemental and amending petition was filed, the total came to $17,100.00.