599 So.2d 478 (1992)
Clifton WILLIAMS, Sr., Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY, et al., Defendants-Appellees.
No. 90-1336.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1992.
*479 J. Minos Simon, Lafayette, for plaintiff-appellant.
Roy & Hattan, M. Candice Hattan, Martin, Taulbee, Rowe, Bares & Oliver, Howard W. Martin, Allen & Gooch, Marjorie G. O'Connor, Lafayette, for Allstate Ins. Co.
Before DOUCET and LABORDE, JJ., and CULPEPPER, J. Pro. Tem.[*]
DOUCET, Judge.
This is an appeal from a suit for personal injuries and property damage arising out of an automobile accident which occurred between plaintiff-appellant, Clifton Williams Sr. (Williams), and defendant-appellee, Pauline Gilliam (Gilliam). Suit was filed by plaintiff, Williams, on July 1, 1988, against Pauline Gilliam and Wallace Kelly, among others. Judgment was rendered on March 9, 1990 in favor of Williams in the amount of $3,876.60 reduced by previously paid past medicals and 35% fault allocated to him.
Williams appeals the jury verdict which assessed him with 35% of the fault in causing the accident. Further, Williams alleges that the jury erred in assessing defendant, Kelly, with zero percent of the fault in causing the accident. Finally, Williams contends that the district court erred in refusing to allow plaintiff's counsel to present a "unit-of-time" argument to the jury on the issue of damages.
On March 27, 1988, Williams was operating his 1979 Ford pick-up truck in a westerly direction on Field Street in New Iberia, Louisiana. The vehicle driven by defendant-appellee, Gilliam, a 1985 Renault Alliance, was being driven in an easterly direction. Witness, Louise Pomier, was a guest passenger in the Gilliam vehicle.
In uncontroverted testimony by Calvin Bourque, an officer with the New Iberia Police Department, the following facts were established:
1) Field Street is a narrow street having no center line;
2) Field Street runs east and west and is intersected by Gilbert Street which runs north and south;
3) The accident occurred approximately 66 feet west of the Gilbert-Field intersection;
4) Field Street has a railing which runs along its north side about five feet from its edge;
5) There were three cars parked alongside of this railing, all of which protruded into the eastbound lane of traffic at the time of the accident;
6) The accident occurred alongside of the third car, owned by defendant, Kelly, *480 which protruded approximately three and one-half feet into the westbound lane.
It is undisputed that Williams was traveling in his lane of traffic, while Gilliam was traveling partially in the east and west bound lanes of travel and did not resume the proper lane of travel prior to the collision. It is also undisputed that Williams' truck left skid marks of 20 feet in the westbound lane and Gilliam left no skid marks. It is disputed what portion of the skid marks were made after impact. However, taking into account the conflicting testimony, it can be deduced that six to nine feet of the marks were made after impact.
Williams maintains that the accident resulted from Gilliam's negligence in not operating her motor vehicle upon the correct half of Field Street and in not yielding at least one-half of the main traveled portion of the road. Williams also alleges that defendant, Kelly, was a contributing cause of the accident because Kelly improperly parked a 1976 Mercury two-door car which encroached into the lane of travel where the accident occurred.
Williams testified that he first became aware of the oncoming Gilliam vehicle when the car "was just coming out of the [Field Street] curve." Evidence was presented which demonstrated that the curve in Field Street is located westward of the parked cars and approximately 150 feet west of the Gilbert-Field intersection. It is unclear from his testimony whether Gilliam was already traveling in Williams' lane at this point. He declared that as Gilliam got around the first parked car, she looked as though she was coming to a stop, then suddenly came through "like she was saying she can make it or something." Williams stated he got way over towards the right and Gilliam "just speed [sic] up" and came into his lane. Williams testified that his reaction was as follows:
A She came into my lane.
Q When she came into your lane what did you do? A Well, I was looking toward the side to see how close I was to the ditch. As a matter of fact, I got just about in the ditch. And she kept coming fast and she got to this car and she stopped. She hit me. She wind up way in the back of me.
Q So she came around into your lane and you saiddid you apply any of your brakes?
A I applied brakes.
Williams testified that Gilliam's whole car was in his lane of travel except maybe her right wheel when the cars made contact.
Gilliam testified on cross-examination that as she was driving around the Field Street curve, she saw three parked cars on her side of the roadway but she could not recall if one car was protruding more than another. On direct she declared that the cars protruded equally. As the parked cars came into her view, she "was already over a little" and confirmed that it was not necessary to move over more to the left to pass. Gilliam denied driving in the middle of the road as she maneuvered the curve on Field Street and stated that only her left wheel was on Williams' side of the street. It is her testimony that she first saw Williams as he came across the [Gilbert] intersection, and by that time she had already made the turn and gotten to the first parked car. Gilliam testified that she could not move to the right without hitting the parked car in order to avoid Williams, who had continued to move forward in his lane. Gilliam explained that upon approaching the third parked car owned by Kelly, she had been traveling at a rate of about five miles per hour and came to a standstill when Williams hit her car. She stated that her vehicle left no skid marks. On direct examination, Gilliam testified that there was enough room on the paved portion of the left lane for Williams to pass.

WILLIAMS' LIABILITY
Williams asserts that the jury erred in finding him comparatively at fault in connection with the accident made the basis of this suit. A trial court's factual findings should not be disturbed on appeal absent manifest error. Where a finding by the trier of fact is based on its decision to *481 credit the testimony of one witness over another, that finding can virtually never be manifestly erroneous in the absence of conflicting documentary evidence or internal inconsistencies in the testimony. Rosell v. ESCO, 549 So.2d 840 (La. 1989), on remand, 558 So.2d 1360 (La.App. 4th Cir. 1990), writ denied, 561 So.2d 105 (La.1990). The trial court found plaintiff Williams to be 35% at fault in causing the collision. After reviewing the record as a whole it is apparent that Williams was in fact comparatively at fault for the accident made the basis of this suit. The testimony by Gilliam was that that she had already reached the first parked car and was in a position to pass the car when she saw the Williams vehicle at the Gilbert intersection, that she was at a complete standstill beside the third parked car when Williams' truck struck her car, and furthermore, that there was enough room on the paved portion for Williams to pass.
Testimony by Louise Pomier, guest passenger in the Gilliam vehicle, was that the Gilliam vehicle was stopped when hit by the Williams truck, that Williams was not watching where he was going, and never turned his head forward or slowed down prior to the impact. Had Williams been keeping a proper lookout, he would have had an opportunity to avoid the accident. Failure to do so was negligence on his part. No testimony was presented at trial to establish the speed at which Williams was traveling, nor was expert testimony presented to support the theory that the skid marks made by Williams' truck precluded the jurors from determining that Williams was comparatively negligent.
Williams, on direct examination, stated that Gilliam hit his truck. However, Gilliam as well as passenger Pomier both testified that the Gilliam car was at a standstill when Williams' truck hit the Gilliam car. Furthermore, Police Officer Bourque testified that Williams stated that he had hit the Gilliam car during the traffic investigation. Williams denies this.
Secondly, Williams testified on direct that he looked to the right as he approached the Gilliam vehicle in order to determine the proximity of the ditch. Passenger Pomier testified that Williams didn't see them approaching because his head was turned. On redirect, Williams contradicted his prior testimony by stating that he never turned his head to the right in coming into the Field Street roadway. It is reasonable for the jury to have chosen to believe the testimony of three witnesses as opposed to plaintiff's version, as well as to believe one version over another where plaintiff contradicted himself. Accordingly, we will respect the jury's finding of fact as to Williams' liability.

KELLY'S LIABILITY
Williams argues that the jury erred in failing to apportion fault to Kelly, the owner of one of the three parked cars. In order to determine whether liability exists, it is necessary to apply a "duty-risk" analysis, asking:
1) Was the act or omission complained of a cause-in-fact of the harm?
2) Did the defendant owe a duty to protect this plaintiff from this type of harm arising in this manner?
3) Did the defendant violate the duty?
Accordingly, we must first consider whether the failure of defendant Wallace Kelly to properly park his vehicle off the traveled portion of Field Street was a cause-in-fact of the accident.
"An act of omission is considered to be a cause-in-fact of harm to another if it was a "substantial factor" in bringing about the accident. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970); Lejeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978). Restatement of Torts 2d, Sections 431-33 (1965). As noted in the restatement, factors which may be considered in determining whether the actor's negligence is a substantial factor include `whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm ...'
*482 The `substantial factor' test is akin to the `but for' test (i.e. the accident would not have happened but for the defendant's negligence), except that where more than one party's negligence would have caused the accident absent the other party's negligence, Dixie, supra, and Lejeune, supra, hold both to be causative.
As succinctly stated by the Louisiana Supreme Court in Lejeune, supra:
'As Prosser [on Torts, Section 41 at pp. 237-38 (4th Ed.1971)] notes, the `but for' test (that the accident would not have happened but for the defendant's negligence), while it explains the greater number of cases, does not serve as an adequate test for the present situation: `If two causes occur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result, some other test is needed ...' In such cases it is quite clear that each cause has in fact played so important a role in producing the result that responsibility should be imposed upon it; and it is equally clear that neither can be absolved from that responsibility upon the ground that the identical harm would have occurred without it, or there would be no liability at all. Id., p. 239.'"
Trahan v. State, Department of Transportation and Development, 536 So.2d 1269, 1272 (La.App. 3rd Cir.1988), writ denied, 541 So.2d 854 (La.1989).
The jury found that Kelly was not negligent or that if he was negligent, he was not a cause-in-fact of the accident. Kelly in his argument on appeal would have us ignore the substantial factor rule by looking no further than the negligence of Pauline Gilliam and/or Clifton Williams.
The accident might have occurred had Kelly not parked in the Field Street roadway. However, it is also true that the accident might not have happened except for the combined negligence of Gilliam, Kelly, and Williams.
"The mere possibility that the accident would have occurred despite the required precautions does not break the chain of causation."
Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298, 304 (1962). The negligence of each was a substantial factor in the accident. Accordingly, the negligence of each was a cause-in-fact.
Having established that the negligence of Kelly was a cause-in-fact of the accident, we must determine whether Kelly owed a duty to the traveling public to abstain from parking illegally, which encompassed the risk to which Williams was exposed in this case. According to the record, Kelly was ticketed by Officer Bourque for illegally parking. The record reflects that Kelly's car protruded three and one-half feet into the eastbound lane of travel on Field Street, thereby subjecting motorists to an unreasonable risk of harm. The argument that no duty existed because there was not a no parking sign in the area of Kelly's vehicle, and that his car was parked in a location customarily used for parking does not excuse Kelly from the obligation to park legally or alternatively to not create an unreasonable risk of harm by parking illegally. We have no difficulty in finding that Kelly had a duty to park legally thereby protecting motorists from an unreasonable risk of harm.
Finally, it must be determined whether the duty was breached. Kelly knew his car protruded into the roadway. He confirmed on cross examination that some part of his car would have to protrude into the road because of the railing along Field Street. From testimony by defendant, Gilliam, and passenger, Pomier, we learn that Gilliam was unable to yield to plaintiff, Williams, and avoid impact because she was precluded from maneuvering to the right where the Kelly vehicle was located. The fact that other vehicles were illegally parked in the same manner and that Kelly was third in line does not absolve any party from a determination of liability. Rather, all three cars were contributorily negligent is the reasonable conclusion to draw from the facts. We have *483 no problem in finding that Kelly breached a duty.
We have found that Kelly's action was a cause-in-fact of the accident, that he had a duty, and that he breached it. As a result, we find that the jury was clearly erroneous and erred in finding that Kelly was not liable.

APPORTIONMENT OF FAULT
La.C.C. 2323 provides that:
"When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss."
In the Louisiana Supreme Court case of Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, at 974 (La. 1985), guidelines are provided to assist in the determination of percentage of fault as follows:
"[I]n assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including, (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
Apportionment of fault is a factual matter. The trial court's findings in this regard should not be disturbed on appeal unless they are clearly wrong or manifestly erroneous. Baugh v. Redmond, 565 So.2d 953 (La.App. 2nd Cir.1990); Central La. Electric Company v. Cox Construction Co., Inc., 471 So.2d 1117 (La.App. 3rd Cir. 1985).
After reviewing the record, it is apparent that fault was wrongly apportioned.
Kelly knew his car protruded into Field Street as evidenced by his testimony that he exited his car from the passenger side of his vehicle which means that, since his car was facing westward, he stepped into Field Street as he stepped out of his car. In testimony given by Officer Bourque, we learned that the car protruded three and one-half feet into the roadway of Field Street. The risk of harm created by parked vehicles obstructing full use of a narrow roadway running through a public park is substantial. The risk of harm created by Kelly's conduct is not vitiated in light of what was sought by his conducta convenient parking spot, especially where evidence was presented which indicated there were areas designated for parking in the vicinity of the park.
Considering the facts in light of the Watson guidelines, we determine 30% of fault to be attributed to the parked cars. Two of the three car owners were not made defendants, therefore, Kelly's liability will be assessed at 10%.
Accordingly, fault should be apportioned 10% to Kelly, 25% to Williams, and 45% to Gilliam.

QUANTUM OF DAMAGES
Under the standard review for quantum of damages provided in Reck v. Stevens, 373 So.2d 498 (La.1979), we find the award of damages to be appropriate. Therefore, it is not necessary to decide whether plaintiff's counsel should have been allowed to make a unit-of-time argument with regard to the measure of damages in his closing argument. We conclude that the outcome would have been no different had the argument been allowed as plaintiff suggests.
When the review of a record clearly indicates that the judgment of the lower *484 court is correct and that justice has been done, that judgment will not be overturned because of an error which did not affect the merits. Creevy v. Cummings, 3 La.Ann. 163 (1848); Johnson v. Petit, 236 So.2d 304 (La.App. 4th Cir.1970); Shows v. Williamson, 256 So.2d 688 (La. App. 2d Cir.1972), writ refused 261 La. 231, 259 So.2d 76 (La.1972); Naquin v. Maryland Casualty Company, 311 So.2d 48 (La.App. 3d Cir. 1975), writ refused 313 So.2d 598 (La. 1975); Coignet v. Deubert, 413 So.2d 253 (La.App. 4th Cir.1982).
Johnson v. Morris, 431 So.2d 429, 432 (La. App. 4th Cir.1983), writ denied, 437 So.2d 1151 (La.1983). See also Jackson v. Ed's Cab Company, 333 So.2d 701 (La.App. 4th Cir.1976), writ refused, 337 So.2d 877 (La. 1976).
Accordingly, the judgment of the trial court is affirmed as to the award of damages. The judgment is amended to reflect that fault for the accident is apportioned 10% to Wallace Kelly, 45% to Pauline Gilliam, and 25% to Clifton Williams, Sr.
Accordingly, the judgment of the trial court is affirmed as amended.
AFFIRMED AS AMENDED.
NOTES
[*] Honorable William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.